IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
May 11, 2011 Session

## STATE OF TENNESSEE v. DAVID LYNN SISK

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Cocke County**
**No. 0362      Ben W. Hooper, II, Judge**

---

**No. E2009-00320-SC-R11-CD - Filed June 15, 2011**

---

The defendant was convicted at trial of three offenses: aggravated burglary; theft of $10,000 or more but less than $60,000; and theft of $1,000 or more but less than $10,000. The trial court classified the defendant as a career offender, imposed sentences of fifteen, fifteen, and twelve years respectively, and ordered the twelve-year sentence to be served consecutively, for an effective sentence of twenty-seven years. On appeal, the Court of Criminal Appeals determined as follows: (1) that the conviction for theft of $1,000 or more but less than $10,000 violated the prohibition against double jeopardy; (2) that, if properly convicted of the remaining offenses, the defendant qualified as a persistent rather than a career offender; and (3) that, in any event, the evidence was insufficient to support the convictions for aggravated burglary and theft of $10,000 or more but less than $60,000. While conceding that the Court of Criminal Appeals had properly set aside the lesser theft conviction and, in consequence, correctly determined that the defendant qualified as a persistent rather than a career offender, the State applied for permission to appeal, arguing that the other two convictions should be reinstated. This Court, applying the standard of review established in State v. Dorantes, 331 S.W.3d 370 (Tenn. 2011), holds that the evidence presented at trial warrants reinstatement of the convictions. The judgment of the Court of Criminal Appeals is, therefore, affirmed in part and reversed in part, and the case is remanded for resentencing in light of this opinion.

**Tenn. R. App. P. 11; Judgment of the Court of Criminal Appeals Affirmed in Part**
**and Reversed in Part**

GARY R. WADE, J., delivered the opinion of the Court, in which CORNELIA A. CLARK, C.J., JANICE M. HOLDER, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; Gordon W. Smith, Associate Solicitor General; Renee W. Turner, Senior Counsel; James B. Dunn, District Attorney General; and

Joe Crumley and Brownlow Marsh, Assistant District Attorneys General, for the appellant, the State of Tennessee.

Wesley D. Stone, Knoxville, Tennessee (on appeal) and Brad Davidson, Newport, Tennessee (at trial), for the appellee, David Lynn Sisk.

**OPINION**

On or about April 4, 2006, the Cocke County Sheriff's Department discovered a black 1992 BMW that had been wrecked, burned, and struck several times by what appeared to have been a pointed tool. An investigation revealed that the automobile was owned by Newport resident Manit Subhakul and his wife, Marina (the "victims"). Lieutenant Ronnie Sanders of the Newport Police Department drove to the victims' residence at 504 7th Street to inform them that their damaged automobile had been found. No one was present at the house, but Lieutenant Sanders observed that a window had been broken out in the rear of the house. He contacted Detective George Grooms, a criminal investigator with the Newport Police Department, who initiated an investigation of the scene. Detective Grooms found that the back door was open and a large television set was sitting inside the entrance, lying on its side in the kitchen. It was later determined that the television set was from the master bedroom of the house. Detective Grooms concluded that a burglar had gained entry through a bathroom window and had thoroughly searched the contents of the residence. He described the house as "partially ransacked" and "in . . . disarray." Although the police found latent fingerprints inside the residence, none were suitable for comparative purposes.

Detective Grooms also found a partially smoked, hand-rolled cigarette just inside the back door in an area leading to the kitchen. He described the cigarette butt as having a stain on it but noted that it was "not crumpled" and did not "appear to be stepped on." He also stated that he had "no independent recollection of a cigarette ever sticking to my shoe, and when it comes to conducting a search inside of a house . . . we make absolutely sure that we don't carry any foreign substance inside the house . . . to the best of our ability." He surmised that "since the Subhakuls didn't smoke, it wasn't their cigarette, that it had to be left behind by the perpetrator." Both the hand-rolled cigarette butt and a beer bottle found in the front yard of the residence were sent to the Tennessee Bureau of Investigation's ("TBI") Knoxville Regional Crime Laboratory for DNA testing. Jennifer Millsaps, a special agent forensic scientist at the Laboratory, testified that she tested both the cigarette butt and the beer bottle "to establish a DNA profile that could be later used for comparison against any individuals in the case." She stated that she found no DNA on the beer bottle, but she did find DNA on the cigarette butt.

The victims had left Newport to visit relatives in Thailand on March 27, 2006, eight days before police discovered the burglary, and were unable to return home for more than a

week after they were notified of the crime. This created a delay in the efforts of the Newport Police Department to identify the items stolen from the victims' residence. Eventually, the victims identified numerous items that had been taken from their home, including a small safe containing cash and gold coins, several pieces of jewelry, and other valuables. The police, however, were only able to recover the door face of the safe and several family photographs, which were found on a river bank. Subhakul testified at trial that the estimated value of the BMW, which had been recently reconditioned, was $26,000, and that the total value of the other items taken was approximately $40,000.

David Lynn Sisk (the "Defendant") lived with his mother at 409 7th Street, which was located across the street and two doors down from the victims' residence. He became a suspect in the burglary "by word of mouth." Detective Grooms, following up on the lead, obtained a search warrant in order to procure a DNA sample from the Defendant. Subhakul testified that he was aware the Defendant lived across the street and that he had often seen the Defendant smoking cigarettes outside his mother's residence. Subhakul further stated that he had never given the Defendant permission to enter his residence.

Agent Millsaps testified that she compared the DNA profile obtained from the Defendant with the DNA profile developed from the cigarette butt found inside the victims' residence, and that the two profiles matched. Agent Millsaps, who was declared by the trial court to be "competent to testify as an expert in the forensic science field, especially with respect to DNA," further stated that "[t]he probability of an unrelated individual having the same DNA profile from either the African American, Caucasian, Southeastern Hispanic or Southwestern Hispanic populations exceeds the current world population [of] approximately six billion." In other words, "the chances of walking out in the general population and finding someone else who would have the same DNA profile as the [Defendant] are greater than the world population." She acknowledged on cross-examination that the DNA testing could not identify how long the Defendant's DNA profile had been on the cigarette butt.

On January 3, 2007, after receiving the results of the DNA analysis from the TBI and approximately nine months after the burglary of the victims' home occurred, officers went to the Defendant's residence in an attempt to effectuate an arrest. The Defendant was on the front porch of the house talking on his mobile phone. When he saw the officers stop in front of the house, he ran from them. After chasing the Defendant for approximately ten or fifteen minutes, the officers apprehended him and took him into custody. On cross-examination, Detective Grooms acknowledged that the officers' visit to the Defendant's house on January 3, 2007, "was regarding a totally separate incident than this one," but on redirect he clarified that the officers also intended to talk to the Defendant about the burglary when they went to his residence.

The Defendant chose not to offer any proof at trial. At the conclusion of its deliberations, the jury returned verdicts of guilt for aggravated burglary, a Class C felony, see Tenn. Code Ann. § 39-14-403(b) (2003); theft of property valued at $10,000 or more but less than $60,000, a Class C felony, see Tenn. Code Ann. § 39-14-105(4) (2003); and theft of property valued at $1,000 or more but less than $10,000, a Class D felony, see Tenn. Code Ann. § 39-14-105(3). The trial court determined that the Defendant qualified as a career offender and imposed sentences of fifteen years for aggravated burglary, fifteen years for theft of property valued at $10,000 or more but less than $60,000, and twelve years for theft of property valued at $1,000 or more but less than $10,000. The trial court ordered that the sentence for the lesser theft conviction be served consecutively to the sentences for the other two convictions, which were to be served concurrently. This resulted in an effective sentence of twenty-seven years.

On appeal, the Court of Criminal Appeals reversed and dismissed the conviction for theft of property valued at $1,000 or more but less than $10,000 as violative of the prohibition against double jeopardy.[1] State v. Sisk, No. E2009-00320-CCA-R3-CD, 2010 WL 3502512, at *6 (Tenn. Crim. App. Sept. 8, 2010); see also State v. Phillips, 924 S.W.2d 662, 665 (Tenn. 1996) (observing that, generally, "[a] single offense may not be divided into separate parts") (citing State v. Black, 524 S.W.2d 913, 916-20 (Tenn. 1975)); State v. Epps, 989 S.W.2d 742, 746 (Tenn. Crim. App. 1998) (vacating and dismissing the conviction for attempted theft where the defendant was also convicted of theft arising from the same criminal episode and holding that "where the takings are all pursuant to a single intent, there is but a single larceny"). Because the lesser theft, a Class D felony, had been set aside as a violation of the prohibition against double jeopardy, and the only remaining theft conviction qualified as a Class C felony, the Court of Criminal Appeals further determined that the Defendant qualified as a Range III persistent offender rather than as a career offender. Sisk, 2010 WL 3502512, at *10 (citing Tenn. Code Ann. § 40-35-107(a) (2003 & Supp. 2005) ("A 'persistent offender' is a defendant who has received: (1) Any combination of five (5) or more prior felony convictions within the conviction class or higher, or within the next two (2) lower felony classes . . . .")). The Court of Criminal Appeals did not remand for resentencing, however, because it also determined that there was insufficient evidence from which the jury could have concluded that the Defendant had committed either the aggravated burglary or the theft of property valued at $10,000 or more but less than $60,000. Sisk, 2010 WL 3502512, at *3-4. Judge D. Kelly Thomas, Jr. dissented from this portion of the majority's holding.

---

[1] Our federal and state constitutions provide protections against being "twice put in jeopardy of life or limb" for the same offense. U.S. Const. amend. V; Tenn. Const. art. 1, § 10; see also State v. Denton, 938 S.W.2d 373, 378 (Tenn. 1996).

The State filed an application for permission to appeal. While conceding that the Court of Criminal Appeals had properly set aside the Class D felony conviction for theft of property valued at $1,000 or more but less than $10,000, and, in consequence, that the Defendant qualified as a persistent rather than a career offender, the State asserts that the evidence it presented at trial was sufficient to support the convictions for aggravated burglary and theft of property valued at $10,000 or more but less than $60,000. We granted the State's application for review.

**Standard of Review**

Traditional principles apply to the appellate review of challenges to the sufficiency of the convicting evidence. Initially, "the State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." State v. Vasques, 221 S.W.3d 514, 521 (Tenn. 2007) (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)). The jury, as the trier of fact, is empowered to assess the credibility of the witnesses, to address the weight to be given their testimony, and to reconcile any conflicts in the proof. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). When there is a challenge to the sufficiency of the evidence, the relevant question is whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e). "Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009) (citing State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992)). The standard of review "'is the same whether the conviction is based upon direct or circumstantial evidence.'" Id. (quoting State v. Sutton, 166 S.W.3d 686, 689 (Tenn. 2005)).

A criminal offense may, of course, be established exclusively by circumstantial evidence. Duchac v. State, 505 S.W.2d 237, 241 (Tenn. 1973); Marable v. State, 313 S.W.2d 451, 456-58, 461 (Tenn. 1958). Ultimately, however, the jury must decide the significance of the circumstantial evidence, as well as "'[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence.'" State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting Marable, 313 S.W.2d at 457). Appellate courts may not substitute their own inferences for those drawn by factfinders in circumstantial evidence cases. State v. Lewter, 313 S.W.3d 745, 748 (Tenn. 2010).

Years ago, in State v. Crawford, 470 S.W.2d 610 (Tenn. 1971), this Court adopted a standard of proof in criminal prosecutions based exclusively upon circumstantial evidence

that purportedly required the State to prove facts and circumstances "so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt." Id. at 612. This Court also stated in Crawford that in such cases,"[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." Id. at 613. This language was recited for years by Tennessee courts as controlling in those cases in which the sufficiency of exclusively circumstantial evidence was at issue; indeed, it was used by both the Court of Criminal Appeals and the trial court in this case. See Sisk, 2010 WL 3502512, at *2.[2] In State v. James, 315 S.W.3d 440, 455 n.14 (Tenn. 2010), however, we pointed out the inconsistency between the terminology employed in Crawford and its progeny and the standard of proof applied by the United States Supreme Court in those cases in which the evidence is solely circumstantial. See Jackson, 443 U.S. at 326 (rejecting the notion "that the prosecution [i]s under an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt").[3] Finally, in State v. Dorantes, 331 S.W.3d 370, 381 (Tenn. 2011), we adopted the federal standard in Tennessee and eschewed any distinction between the standard of proof required in cases based solely upon circumstantial evidence and that in cases where direct evidence of guilt is presented by the State. Although we observed in Dorantes that, as a practical matter, there was little difference between the federal standard and the "reasonable hypothesis" language used in Crawford, we also noted that, depending

---

[2] The trial court gave an instruction to the jury on direct and circumstantial evidence while Detective Grooms was being cross-examined regarding the cigarette butt that was found inside the victims' residence. This instruction made implicit reference to the Crawford language: "When the evidence is entirely circumstantial, then before you would be justified in finding the defendant guilty, you must find that all the essential facts are consistent with the theory of guilt, and the facts must exclude every other reasonable theory except that of guilt."

[3] The Court in Jackson cited Holland v. United States, 348 U.S. 121 (1954), in which it had directed "that where the jury is properly instructed on the standards for reasonable doubt," it would be "confusing and incorrect" to require an additional instruction that circumstantial evidence presented by the government "must be such as to exclude every reasonable hypothesis other than that of guilt." Id. at 139-40. The federal Courts of Appeals have followed the Supreme Court's guidance and consistently rejected the view that circumstantial evidence is less probative than direct evidence. See, e.g., United States v. Kelley, 461 F.3d 817, 825 (6th Cir. 2006) ("'Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt.'" (quoting United States v. Spearman, 186 F.3d 743, 746 (6th Cir. 1999))); United States v. Bell, 678 F.2d 547, 549 (5th Cir. 1982) ("It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt."); United States v. Nelson, 419 F.2d 1237, 1241 (9th Cir. 1969) ("Since circumstantial and testimonial evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is to be required of the jury is that it weigh all of the evidence, direct or circumstantial, against the standard of reasonable doubt.").

on the nature of the circumstantial evidence presented at trial, the adoption of the federal standard of proof could result in a different outcome in some cases. Id.

## Analysis

One commits an aggravated burglary when, without the effective consent of the property owner, he or she enters a habitation with the intent to commit a felony, theft, or assault. Tenn. Code Ann. §§ 39-14-402(a)(1) & -403 (2003). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103 (2003).

The State argues that, in reversing the Defendant's convictions for aggravated burglary and theft of property valued at $10,000 or more but less than $60,000, the Court of Criminal Appeals failed to give proper deference to the jury's findings of fact and improperly substituted its own inferences for those drawn by the jury. The evidence presented at trial established that the Defendant, a smoker, lived across the street and two houses down from the burglarized house. The victims had never given the Defendant permission to enter their residence and were not smokers themselves. The victims were out of the country when the house was burglarized, and Subhakul testified that the items stolen from inside his home were valued at approximately $40,000, while the stolen BMW was worth $26,000. A partially smoked, hand-rolled cigarette containing the DNA of the Defendant was found inside the victims' home on the date the police discovered the burglary. The chances that the DNA found on the cigarette belonged to someone other than the Defendant were less than one in six billion. The cigarette butt had not been crumpled or flattened as if it had been tracked into the house from the street; indeed, the investigating officers were careful to ensure that they did not track any debris into the crime scene. When the police went to the Defendant's residence several months later to arrest him on another charge and speak to him about the burglary of the victims' home, he ran from them and was not captured for ten to fifteen minutes.[4] Viewing the evidence, as we must, in the light most favorable to the State, we conclude that a rational finder of fact could have found that the essential elements of the crimes of aggravated burglary and theft of property valued at $10,000 or more but less than $60,000 were proven beyond a reasonable doubt.

---

[4] "'[F]light and attempts to evade arrest are relevant as circumstances from which, when considered with the other facts and circumstances in evidence, a jury can properly draw an inference of guilt.'" Dorantes, 331 S.W.3d at 388 (quoting State v. Zagorski, 701 S.W.2d 808, 813 (Tenn. 1985)). Moreover, the trial court properly charged the jury as to how to interpret flight from arrest, providing the jurors with the appropriate pattern instruction. See Dorantes, 331 S.W.3d at 388 (quoting T.P.I.-Crim. 42.18 (10th ed. 2006)).

In its opinion reversing the Defendant's convictions, the Court of Criminal Appeals distinguished our recent decision in State v. Lewter, 313 S.W.3d at 749-50, and concluded that "other than the presence of the defendant's DNA on the cigarette butt found inside the home, no other evidence corroborated the State's theory that the defendant committed the offenses in this case." Sisk, 2010 WL 3502512, at *3. As was the case in Lewter, however, there is significant evidence to support the jury's guilty verdict other than merely the presence of an item found at the crime scene that contained the Defendant's DNA. The undamaged condition of the cigarette butt, Detective Grooms' testimony that it was unlikely the cigarette had been tracked into the house and that the victims themselves were not smokers, the proximity of the Defendant's residence to the burglarized house, the fact that the Defendant often was seen smoking outside and had never been invited into the victims' residence, and the Defendant's flight from police on January 3, 2007, all corroborate the DNA evidence.[5] While the intermediate appellate court posited that "[s]everal plausible explanations for the presence of the defendant's cigarette inside the victims' residence come to mind, including that the cigarette butt was 'tracked' into the residence," Sisk, 2010 WL 3502512, at *3, our duty on appeal of a conviction is not to contemplate all plausible inferences in the Defendant's favor, but to draw all reasonable inferences from the evidence in favor of the State. Given Detective Grooms' description of the cigarette butt and its location, it was perfectly reasonable for the jury to believe the State's theory that the Defendant had entered the victims' residence during the burglary and left the cigarette butt there. The evidence is sufficient to support the jury's verdict.

It is notable that the Court of Criminal Appeals stated that "[t]he mere presence of a single cigarette partially smoked by the defendant is neither sufficient to weave an inescapable web of guilt around the defendant, see [State v.] McAfee, 737 S.W.2d [304,] 306 [(Tenn. Crim. App. 1987)], nor 'to exclude every other reasonable hypothesis save the guilt of the defendant,' see Crawford, 470 S.W.2d at 612." Sisk, 2010 WL 3502512, at *3. Because the court's reference to Crawford was written prior to our decision in Dorantes, it was not error. Applying the standard of proof under Dorantes, however, which clarifies that circumstantial evidence is equally as probative as direct evidence, we conclude that the jury exercised its prerogative by determining that the Defendant was guilty of both aggravated burglary and theft of property having a value of $10,000 or more but less than $60,000.

---

[5] The Defendant argues that his flight from police was irrelevant for purposes of proving his guilt because the arrest took place several months after the burglary of the victims' residence and involved another charge. The Defendant challenged the admission of this evidence at trial and procured, on cross-examination, an admission from Detective Grooms that the officers went to the Defendant's residence intending to arrest him on another charge. On redirect examination, however, Detective Grooms clarified that he also intended to talk with the Defendant about the burglary. It was not, therefore, unreasonable for the jury, having heard this testimony and having been properly charged on the inferences to be made from the evidence of the Defendant's flight, to consider it corroborative of other evidence of the Defendant's guilt.

**Conclusion**

The judgment of the Court of Criminal Appeals is reversed in part and the convictions for aggravated burglary and theft of property with a value of $10,000 or more but less than $60,000 are reinstated. As determined by the Court of Criminal Appeals, the Defendant qualifies as a persistent offender for release eligibility purposes. We remand this case to the trial court for resentencing on the two reinstated convictions. It appearing that the Defendant is indigent, costs of this appeal shall be taxed to the State of Tennessee.

_____
GARY R. WADE, JUSTICE