IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 30, 2011

## STATE OF TENNESSEE v. DENNY MERRILL PHILLIPS

**Direct Appeal from the Criminal Court for Campbell County**
**No. 14235     E. Shayne Sexton, Judge**

**No. E2010-02233-CCA-R3-CD - Filed March 12, 2012**

The defendant, Denny Merrill Phillips, was convicted of one count of solicitation to commit rape in violation of Tennessee Code Annotated section 39-13-528(a)(3), a Class C felony, on the grounds that he followed the victim into a public men's room and verbally requested that the victim perform fellatio on him.  The defendant challenges the sufficiency of the evidence to support his conviction, arguing that the State failed to present any facts or evidence from which the jury could have reasonably concluded that the sexual penetration solicited by the defendant would have occurred without the victim's consent.  We note that a jury, when determining whether the sexual act being solicited is to be accomplished with or without consent, may consider the totality of a defendant's conduct - not just the particular words used by the defendant.  However, in this case, even viewing the defendant's conduct in its entirety, we cannot conclude that the evidence presented was sufficient to establish that the sexual act being solicited by the defendant would have been accomplished absent the victim's consent.  A verbal request for sex or an offer to pay for sex, without more, is simply not a solicitation to commit rape as it lacks proof of the non-consent element which is required.  We agree that the evidence presented was sufficient to support a conviction for solicitation to commit statutory rape.  However, because our supreme court has established that statutory rape is not a lesser included offense of rape, *see State v. Stokes*, 24 S.W.3d 303, 305-06 (Tenn. 2000), the defendant's conviction cannot be amended to reflect that charge.  Accordingly, the judgment of conviction must be reversed.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Martha J. Yoakum, District Public Defender; Tina L. Sloan (on appeal) and Charles A. Herman (at trial), Assistant Public Defenders, for the appellant, Denny Merrill Phillips.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; William Paul Phillips, District Attorney General; and Scarlett W. Ellis, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On August 27, 2009, the defendant was indicted on a single count of solicitation to commit rape in violation of Tennessee Code Annotated section 39-13-528. He was tried by jury on January 13, 2010. At his trial, the following evidence was presented.

The victim[1] in this case testified that he was sixteen years old on the date of the incident, June 19, 2009, and that he was born in 1993. The victim testified that he arrived at Cove Lake Park on the day in question after receiving a ride from a friend. Soon after he arrived, the friend left to go swimming at the park's pool, and the victim stayed alone playing basketball at a basketball goal near the park's public restrooms. The victim testified that after he had played for about forty-five minutes, he noticed the defendant drive into the area and park his vehicle, a black Nissan 350Z, at the top level of a split level parking lot, facing toward the public restrooms. Approximately fifteen minutes later, the victim testified, he took a break from playing and went to the public restroom to relieve himself. The victim testified that the defendant followed him into the bathroom. The defendant did not say anything to the victim at this time, and the victim testified that he thought the defendant was simply using the restroom.

The victim resumed playing basketball for another thirty minutes. During this time period, he noticed that the defendant had moved his car – which was one of the only ones in the lot – from the place he had initially parked it in the upper lot to a spot on the lower lot that was closer to the public bathrooms and closer to the spot where the victim was playing basketball. When the victim took a second break to go into the public restroom, the defendant again followed him inside. The victim testified that he sat in the last stall during this trip. As he left the stall and tried to exit the restroom, the defendant stopped him.

The victim testified that the defendant said something to him that he could not understand, so the victim asked the defendant what he had said. The victim testified that, in response, the defendant "asked me if I would like to give him a blow job." The victim testified that he replied "no" to the defendant. The victim testified that the defendant then said, "I'll give you $100." The victim testified that he again said "no" and walked out of the

---

[1] It has been our policy to refer to the minor victims of sex offenses only by their initials. In this case, we elect to protect the identity of the victim even further by omitting his initials.

restrooms.

The victim testified that, as he walked out of the door, he pulled his cell phone out of his pocket and called 911. The victim then walked behind the defendant's car, obtained the defendant's license tag number, and gave that number to the 911 operator. The victim testified that at the time he called 911, he was "scared to death." The victim testified that after he left the bathroom, the defendant immediately got in his car and left. The victim testified that a park ranger arrived soon thereafter and took his statement.

Following the victim's testimony, Ranger Roby Wray took the stand. Ranger Wray testified that he was working at Cove Lake State Park on the day in question. Ranger Wray testified that while he was on patrol that morning, he saw the defendant driving through the park. Ranger Wray testified that he had seen the defendant in the park before, perhaps once a week for the preceding two or three weeks, but he had never spoken with the defendant. While patrolling later that same morning, Ranger Wray testified that he saw the defendant's car parked in the upper portion of the parking lot near the public restrooms and that he also saw the victim playing basketball nearby. Ranger Wray testified that he did not see any other vehicles in that portion of the parking lot at that time.

Ranger Wray testified that he left the park to make a bank deposit and had just returned when he received a call from 911. When he returned to the public restrooms, the defendant was no longer there. Ranger Wray testified that he interviewed the victim at that time. The following day, he visited the defendant at the defendant's residence near Medford, Tennessee. Ranger Wray testified that he read the defendant his *Miranda* rights and interviewed him after the defendant waived those rights. According to Ranger Wray, the defendant acknowledged during this interview that he had been in the park's public restrooms twice on the previous day while the victim was inside. However, the defendant denied speaking to the victim during his first trip to the restroom and denied requesting him to perform oral sex during his second trip to the restroom. Ranger Wray testified that the defendant claimed that he had simply said "hi" to the victim during their second restroom encounter.

During this interview, the defendant claimed to Ranger Wray that he was in the park that day simply to have lunch. Ranger Wray also testified that when he first asked the defendant if he had been in the park the previous day, the defendant replied, "you know that I was because you saw me." Ranger Wray further testified that when he asked the defendant whether or not he had moved his car down from a parking spot near the trees to a parking spot closer to the restrooms, the defendant explained that he had done so to be closer to the restrooms.

The State's next witness was Brandon Elkins, a Detective Sergeant at the Campbell County Sheriff's Office who was one of the officers that had arrested the defendant after his warrant was issued. Sergeant Elkins testified that he picked the defendant up from his house and spoke with him on the road coming back from Anderson County to Campbell County. Sergeant Elkins testified that he gave the defendant his *Miranda* warnings and that, afterward, the defendant agreed to speak with the officers. According to the testimony of Sergeant Elkins, after the arresting officers read a copy of his arrest warrant to the defendant, the defendant stated to the officers that "he thought that money had to be exchanged in order for solicitation to occur." Sergeant Elkins stated that he informed the defendant that no money had to exchange hands and that simply soliciting anyone under the age of eighteen violated the law. Sergeant Elkins testified that the defendant said nothing further after making that statement. Sergeant Elkins also testified that he was present when the defendant gave his date of birth in the intake room of the Campbell County Sheriff's Office and testified that the defendant stated that he had been born on May 5, 1968. Following this testimony, the State rested.

The defendant moved for a judgment of acquittal on the grounds that the State had failed to show that the defendant's crime, if completed, would have contained any element of force or coercion, as needed to establish the crime of rape. The State argued that the victim's lack of consent had been established by his refusal of the defendant's first verbal solicitation, and that the defendant was consequently on notice that the oral sex act sought by the second verbal solicitation (when the defendant offered the victim $100), if completed, would have been done without the victim's consent. The trial court denied the defendant's motion, reasoning that the law was clear that the fact that the underlying crime was not successful was no defense to a charge of solicitation and deeming the issue of consent to be a question for the jury.

Following this discussion, the defendant took the stand in his own defense. The defendant stated that he was forty years old at the time of the alleged incident. The defendant stated that he had traveled to Campbell County on the day in question in order to pay some bills. He stated that after paying these bills, he got lunch and went to Cove Lake Park. He testified that he never parked his car in the upper portion of the parking lot near the public restrooms. He testified that he parked his car in the lower portion of the parking lot. He testified that after parking his car, he went to into the public restroom to relieve himself and wash his hands; afterward, he returned to his vehicle. The defendant testified that during this trip to the men's room, he saw the victim standing sideways in a stall in the bathroom. The defendant testified that he did not speak to the victim during this encounter.

Afterward, the defendant testified that he moved his car from one spot in the lower parking lot to another spot so that he would be shaded by some trees and his car would be

cooler. The defendant testified that he saw the victim go back to the men's room another two or three times. The defendant testified that, during one of these trips, he also went into the men's room. The defendant testified that, during this encounter, the victim was in the last restroom stall when he entered, and there was a third person in the middle stall. The defendant testified that he passed by the victim as he walked to a urinal. The defendant testified that he nodded at the victim as he passed, but no words were exchanged between them. The defendant specifically testified that he never asked the victim to give him a "blow job" or offered him money to perform oral sex.

In addition, the defendant testified that he had never seen the victim before the date in question and that he did not know the victim's age. The defendant further testified that the victim "looks older for his age." The defendant stated that he would not have thought that the victim was under the age of eighteen on the day in question.

On cross-examination, the prosecution confronted the defendant concerning the statement he had made to Ranger Wray during his earlier interview to the effect that he had said "hi" to the victim as they passed each other during their second encounter. The defendant responded that he was not sure whether he had simply nodded to the victim or whether he had said "hi" because it had been a long time since the incident. The defendant also denied stating to Ranger Wray during that interview that Ranger Wray knew he had been in the park the previous day because Ranger Wray had seen him there.

As rebuttal witnesses, the State recalled Ranger Wray, who testified that he had seen the defendant's car parked in the upper portion of the parking lot on the day in question. The State also called Ranger Mark Rooker, who testified that he was also employed by Cove Lake State Park and that he was present with Ranger Wray when Ranger Wray spoke with the defendant on the day after the incident. Ranger Rooker testified that he heard Ranger Wray ask the defendant if the defendant had been in the park on the previous day. Ranger Rooker testified that the defendant replied, "you passed me in the park, you saw me." Following this testimony, the trial court instructed the jury, and the case was submitted.

The defendant was found guilty as charged by the jury later that same day. On May 3, 2010, the trial court sentenced him to four years at thirty percent, split six months confinement followed by three years six months of probation. The defendant filed a timely motion for new trial, which was orally denied from the bench following a hearing on September 7, 2010. Due to some confusion over whether or not a written order had been issued, the defendant filed a premature notice of appeal on September 16, 2010. This court sought to have the matter corrected. On October 18, 2010, the trial court entered a written order denying the defendant's motion for a new trial. Satisfied that the matter is now properly before us, our decision follows.

**I.**

The defendant claims that the evidence is insufficient to support his conviction for solicitation to commit rape. "Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). "When there is a challenge to the sufficiency of the evidence, the relevant question is whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* In discerning the answer to this question, "the State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). Issues such as the credibility of the witnesses, the weight to be given their testimony, and the proper reconciliation of any conflicts in the proof are matters properly entrusted to the jury as a finder of fact and will not be revisited on appeal. *See, e.g., Sisk*, 343 S.W.3d at 65; *Vasques*, 221 S.W.3d at 521. In this case, it is evident from the jury's verdict that they credited the victim's version of events over the version given by the defendant. Consequently, as we analyze the issue before us, we do so by accepting the victim's version of the events as true. Because we do not reweigh the evidence, we must only determine whether, accepting the victim's version of events as truthful, the State submitted evidence that established all of the essential elements of the offense charged.

The defendant was convicted of violating Tennessee Code Annotated section 39-13-528, solicitation of a minor, which renders it a crime "for a person eighteen (18) years of age or older, by means of oral . . . communication . . . to intentionally command, request, hire, persuade, invite or attempt to induce a person whom the person making the solicitation knows, or should know, is less than eighteen (18) years of age . . . to engage in conduct that, if completed, would constitute a violation by the soliciting adult" of several specifically-enumerated sex crimes. One of those crimes is "rape." T.C.A. § 39-13-528(a)(3) (2009). "Rape" is defined as the "unlawful sexual penetration of a victim by the defendant or of the defendant by a victim accompanied by any of the following circumstances," one of which is the "sexual penetration is accomplished without the consent of the victim and the defendant knows or has reason to know at the time of the penetration that the victim did not consent." T.C.A. § 39-13-503(a)(2). Section 528 provides that "[a] violation of this section shall constitute an offense one (1) classification lower than the most serious crime solicited." T.C.A. § 39-13-528(c). Because rape as defined in section 503 is a Class B felony, *see* T.C.A. § 39-13-503(b), solicitation of a minor to commit rape is a Class C felony.

The defendant does not challenge on appeal the evidentiary support for the jury's determinations that: (1) he was more than eighteen years of age; (2) the victim was less than

eighteen years of age; or (3) he verbally requested that the victim perform a sex act on him that would have involved penetration. There is support in the record for the jury's determinations concerning each of these essential elements of the offense contained in the testimony of the victim and/or Sergeant Elkins.

Rather, the defendant argues that the State failed to present any facts or evidence to the jury from which it could have reasonably concluded that the sexual penetration solicited by the defendant would have occurred without the victim's consent. According to the defendant, the evidence shows that the crime for which the defendant solicited the victim, if completed, would have constituted statutory rape. The defendant urges that the record establishes that: (1) his request for oral sex was denied; (2) after this occurred, he walked away; and (3) there are no facts that support a conclusion that the defendant would have engaged in a sex act with the victim without the victim's consent. On the other hand, the State contends that the victim's lack of consent to any sex act was established by his act of saying "no" to the first solicitation and that, consequently, when the defendant solicited the victim a second time, he was aware that if any sex act occurred, it would be done without the victim's consent.

The precise words used by the defendant lend themselves most naturally to an interpretation that the defendant would not have engaged in a sex act with the victim without the victim's consent. The victim testified that the defendant asked him if he would "like" to give him a "blow job," which implies that a sex act would only occur if the victim desired it. The victim further testified that the defendant offered to give him $100, which would also imply that the defendant was soliciting a consensual sex act and that no sex act would occur without the victim's agreement to do so in exchange for money.

In deciding the nature of the offense solicited by the defendant, the jury was free to consider, and we may consider on appeal, not just the actual words used by the defendant to commit the verbal solicitation but also all of the other evidence presented at trial, including the defendant's course of conduct leading up to that verbal solicitation, the context in which it was made, and any other evidence discovered by police that might indicate that the act solicited involved more than the precise words used alone would suggest. However, the State points us to no evidence in the record that would suggest that this defendant was going to do anything other than accept the victim's "no."

The defendant made no statement to the victim, police, or anyone else indicating that he intended to engage in a sex act with the victim without the victim's consent. He did not physically touch the victim. There is no evidence in the record that the defendant carried rope, duct tape, or other material for restraining the victim or that the defendant had a weapon of any sort. When the victim refused his advances, the defendant made no effort to

prevent him from leaving and made no attempt to follow him. The victim was even afforded the opportunity to photograph the defendant's license plate before he escaped. In short, there is no evidence in this case that the defendant solicited the victim with the intention of raping him without his consent.

Judged solely on the words used by the defendant, this appears to be an archetypical example of a solicitation to commit statutory rape. Nothing appearing elsewhere in the record contradicts that interpretation. As statutory rape is not a lesser included offense of rape, *see State v. Stokes*, 24 S.W.3d 303, 305-06 (Tenn. 2000), the facts do not appear sufficient to establish the defendant's culpability of any lesser included offense. Consequently, the defendant's conviction must be reversed.

## II.

In a related argument, the defendant claims that the trial court erred in denying his motion for a judgment of acquittal. Although rendered moot by our resolution of the defendant's sufficiency of the evidence claim, we observe in passing that under the rule announced by our supreme court in *Mathis v. State*, 590 S.W.2d 449, 453 (Tenn. 1979), a defendant waives his right to challenge a trial court's denial of a motion for judgment of acquittal by continuing to participate in the trial. The defendant in this case testified on his own behalf following the trial court's decision to deny his motion, and he would appear to have waived this claim accordingly. *See, e.g., State v. Jason LeBron Rogers*, No. E2007-00354-CCA-R3-CD, 2008 Tenn. Crim. App. LEXIS 433, at **26-27 (Tenn. Crim. App. June 4, 2008).

## CONCLUSION
For the foregoing reasons, the judgment of the trial court is reversed.

_____
JOHN EVERETT WILLIAMS, JUDGE