# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### January 24, 2012 Session

## STATE OF TENNESSEE v. JERRY PHILLIPS

**Direct Appeal from the Criminal Court of Campbell County**
**No. 14171     E. Shayne Sexton, Judge**

———————————————

**No. E2011-00674-CCA-R3-CD - Filed April 5, 2012**

———————————————

Jerry Phillips ("the Defendant") appeals jury convictions for four counts of aggravated sexual battery, resulting in an effective sentence of fifty-four years. Specifically, he contends that the inconsistencies in the victim's testimony render the evidence insufficient to support his convictions. After a thorough review of the record and the applicable law, we affirm the Defendant's convictions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments**
**of the Criminal Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

R. Keith Hatfield, Knoxville, Tennessee (on appeal) and Charles A. Herman, Assistant Public Defender, LaFollette, Tennessee (at trial), for the appellant, Jerry Phillips.

Robert E. Cooper, Jr., Attorney General & Reporter; Nicholas W. Spangler, Assistant Attorney General; William Paul Phillips, District Attorney General; Scarlett W. Ellis, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual and Procedural Background

On July 6, 2009, the Defendant was indicted on six counts of aggravated sexual battery. The Defendant filed a Motion for Bill of Particulars, requesting the exact time and date of the alleged offenses, the location in which the alleged offenses occurred, and the

name and addresses of any witnesses claiming to have observed the offenses. The State provided this information in its Answer to Motion for Bill of Particulars. The following proof was presented when the trial took place on November 19-20, 2009.

The minor victim in this case, J.W.,[1] was ten years old at the time of trial. J.W. testified that she currently lives with her aunt but that she had lived with her parents. Before living with her parents, she had lived with her grandmother. When she lived with her parents, she would often go back to her grandmother's house to spend the night. Her grandmother's boyfriend, the Defendant, lived there with her grandmother. While staying at her grandmother's house, the Defendant touched J.W.'s "private parts" on several different occasions. The State asked J.W. to indicate on a diagram exactly where the Defendant touched her. J.W. indicated the "booby" area and "where she goes to pee" as the places where the Defendant touched her. She stated that the Defendant touched her "booby" with his hand and "where [she] pee[s]" with his tongue and hand.

J.W. testified regarding the specific incidents in which the Defendant inappropriately touched her. On one occasion, while living with her parents, she went over to her grandmother's house to visit. The Defendant asked her to go up to the attic with him and play with a race track. While playing with the race track, he began rubbing her breasts with his hand. Then he asked her to go into her uncle's room that was also located in the attic. Once in that room, he asked J.W. to lay on the bed, and he removed her pants and underwear. Then he placed his mouth "where [she] pee[s]." J.W. stated that she asked the Defendant to stop but that he did not stop until he saw from the window J.W.'s grandmother walking toward the house.

In another instance, J.W. and the Defendant were in a downstairs bedroom in the house, and J.W. was laying on her back on the bed. The Defendant pulled down her pants and underwear and rubbed "where [she] pee[s]" with his hand for "a couple of minutes." On that same day, the Defendant touched her breasts over her clothes.

J.W. also testified that on a different occasion she and the Defendant were sitting on the couch watching Care Bears. At one point, the Defendant unzipped his pants and asked J.W. to put her mouth "where he goes to pee." She did so "[f]or a second," then stopped. The Defendant asked her to do it again, but J.W. left to go play or watch television.

On yet another occasion, the Defendant and J.W. were in the backyard while her grandmother was at the store, and the Defendant set up a tent. The Defendant asked J.W. to

---

[1] In sex offense cases involving minors, it is the policy of this Court to refer to victims by their initials.

come into the tent, at which point he pulled down her pants and underwear and put his mouth "where [she] go[es] pee." She stated that his tongue was "going around." J.W. did not tell her grandmother about these incidents because the Defendant told her not to tell anyone.

On cross-examination, J.W. acknowledged that there were some differences between her testimony at the preliminary hearing and at trial. J.W. testified at the preliminary hearing that, in the instance in the attic on the bed, she was sitting, and not lying, on the bed. She also stated that he used his hand over her clothes to touch "where [she] pee[s]," rather than his tongue with her pants and underwear pulled down. In reference to the incident in the downstairs bedroom, J.W. stated at the preliminary hearing that "he always touched me on top" of her clothes. Additionally, she stated that, while on the couch, he touched her "where I go pee" with her clothes on, as opposed to her testimony at trial that he asked her to kiss "where he goes pee." Finally, regarding the incident in the tent, she acknowledged that her preliminary hearing testimony was that the Defendant touched her "privates" with his hand on top of her clothes. However, J.W. confirmed that her testimony given at trial was accurate and that it was hard for her to talk about these events.

The Defendant testified that he had known J.W.'s grandmother since 1978 and that the two of them had a son together in 1978. The Defendant had lived with J.W.'s grandmother as her boyfriend since July of 2004. When J.W. and her mother moved into J.W.'s grandmother's house in August of 2006, J.W. grew attached to the Defendant. Although the Defendant's relationship with J.W.'s mother started out well, it quickly deteriorated for various reasons. According to the Defendant, J.W.'s mother believed that the Defendant would expose an affair she was having, and she was angry with the Defendant for scolding her about her irresponsibility regarding J.W. J.W.'s mother moved out shortly after her falling out with the Defendant, and she made threats to the Defendant that she would send him back to the penitentiary. Because of those threats, the Defendant was careful not to be alone with J.W. when she came over to visit.

The Defendant further testified that he never touched J.W. inappropriately nor did he ever pull down J.W.'s pants or panties. When asked about the tent incident, the Defendant stated that he set up the tent one day but that the only time when he was in the tent with J.W., J.W.'s grandmother was there as well. He stated that there were other times when he held hands with J.W. or she would lay on the couch with her head in his lap but that he never touched her "in a sexual way."

J.W.'s grandmother testified that the Defendant had an amicable relationship with J.W.'s mother until the Defendant stopped giving money to J.W.'s mother. Defense counsel asked J.W.'s grandmother if it would have been possible for her to have been shopping while the alleged incidents occurred. J.W.'s grandmother denied that possibility because, at the

time the events allegedly took place, her car was not working. Thus, the Defendant had to take J.W.'s grandmother shopping because he has a car with a manual gear shift that she does not know how to operate.

When the allegations arose regarding the Defendant, J.W.'s grandmother confronted J.W. and asked J.W. if the Defendant or anyone else ever touched her inappropriately, to which J.W. responded, "no." J.W.'s grandmother said that she never took showers while J.W. visited, and J.W. stayed in the living room while her grandmother went to the bathroom.

At the close of proof, the trial court dismissed two counts of the indictment. A Campbell County jury found the Defendant guilty on the remaining four counts of aggravated sexual battery. The parties agreed to merge two of the convictions for sentencing purposes, and the trial court then sentenced the Defendant as a Range II offender to consecutive terms of eighteen years for each conviction, for a total effective sentence of fifty-four years. The Defendant filed a Motion for New Trial, alleging insufficiency of the evidence. The trial court denied the Motion for New Trial on July 19, 2011, and the Defendant prematurely appealed, which was deemed timely filed on July 19, 2011. On appeal, the Defendant argues that the evidence is insufficient to support his convictions.

## ANALYSIS

The Defendant contends that the State's evidence was insufficient to support his convictions for aggravated sexual battery of V.W. Our standard of review regarding sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). See also Tenn. R. App. P. 13(e). After a jury finds a defendant guilty, the presumption of innocence is removed and replaced with a presumption of guilt. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Consequently, the defendant has the burden on appeal of demonstrating why the evidence was insufficient to support the jury's verdict. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The appellate court does not weigh the evidence anew. Rather, "a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts" in the testimony and all reasonably drawn inferences in favor of the State. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, "the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom." Id. (citation omitted). This standard of review applies to guilty verdicts based upon direct or circumstantial evidence. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (citing State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). In Dorantes, our

Supreme Court adopted the United States Supreme Court standard that "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." Id. at 381. Accordingly, the evidence need not exclude every other reasonable hypothesis except that of the defendant's guilt, provided the defendant's guilt is established beyond a reasonable doubt. Id.

Aggravated sexual battery is the "unlawful sexual contact with a victim by the defendant or the defendant by a victim [when] . . . [t]he victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-504(a)(4) (2006). "Sexual contact" is defined as including:

> the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification.

Tenn. Code Ann. § 39-13-501(6) (2006).

J.W. testified at trial about four separate instances in which the Defendant inappropriately touched her. First, J.W. stated that she was in the attic with the Defendant and that the Defendant rubbed her breasts. Then, the Defendant pulled down her pants and panties and placed his mouth "where [she] pee[s]." On the second occasion, J.W. was in a downstairs bedroom and the Defendant again pulled down her pants and panties and rubbed "where [she] pee[s]" with his hand for "a couple of minutes." He also touched her breasts over her clothes. J.W. testified that, on the third occasion, the Defendant asked J.W. while the two were sitting on the couch to put her mouth "where he goes to pee." J.W. complied with his request "for a second" and then left to go play or watch television. Lastly, one day when the Defendant and J.W. were in the backyard, the Defendant set up a tent. He asked J.W. to go inside the tent with him, and he again proceeded to pull down her pants and panties. He put his mouth "where [she] go[es] pee," and his tongue was "going around."

The Defendant contends that, because J.W.'s testimony was inconsistent with her testimony at the preliminary hearing, and because her testimony was the only evidence of the offenses, the evidence is insufficient to support the Defendant's convictions. We disagree. Although J.W. acknowledged that, at the preliminary hearing, her testimony was that the Defendant "always touched [her] on top" of her clothes, she also confirmed that her testimony at trial was accurate and that it was difficult for her to talk about these events. The Defendant attempted to attack the credibility of J.W. at trial by highlighting the inconsistencies of her testimony at trial with that at the preliminary hearing. However, it is

the sole province of the jury to determine witness credibility, and the jury obviously accredited J.W.'s testimony at trial. See State v. Sisk, 343 S.W.3d 60, 65 (Tenn. 2011) ("The jury, as the trier of fact, is empowered to assess the credibility of the witnesses, to address the weight to be given their testimony, and to reconcile any conflicts in the proof.") (citing State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008)).

Viewing these facts with the strongest legitimate view in favor of the State, the jury had ample evidence to find in four instances the existence of "sexual contact" sufficient to support the Defendant's aggravated sexual battery convictions. See Harris, 839 S.W.2d at 75.

## CONCLUSION

For the reasons articulated above, we affirm the Defendant's convictions for aggravated sexual battery.

_____
JEFFREY S. BIVINS, JUDGE