IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 5, 2014

**STATE OF TENNESSEE v. RODRIQUEZ JONES**

**Appeal from the Criminal Court for Shelby County**
**No. 12-03877      J. Robert Carter, Jr., Judge**

_____

**No. W2014-00193-CCA-R3-CD  - Filed August 13, 2014**

_____

Appellant, Rodriquez Jones, was convicted of aggravated sexual battery and sentenced to ten years in the Tennessee Department of Correction.  On appeal, he argues that the evidence was insufficient to support his conviction and that the assistant district attorney general committed prosecutorial misconduct during closing arguments.  Following our review, we affirm the judgment of the trial court; however, we must remand this matter to the trial court to correct the judgment form.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed;**
**Case Remanded**

ROGER A. PAGE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Gerald S. Green, Memphis, Tennessee, for the appellant, Rodriquez Jones.

Robert E. Cooper, Jr., Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Abby Wallace, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case concerns the aggravated sexual battery of D.W.,[1] a child under thirteen years old, alleged to have occurred between December 1 and December 16, 2011.  A Shelby County grand jury indicted appellant for this offense, and his case proceeded to trial in July 2013.

_____

[1]  It is the policy of this court to refer to minor victims by their initials to protect their privacy.  In furtherance of this policy, we will also refer to the victim's family members and other witnesses of minor age who testified at trial similarly.

## I. Facts

At trial, D.W. testified that at the time of the trial, she was twelve years old. In 2011, she lived with her mother and six of her twelve siblings. The victim said that she had her own room but that her younger brothers would sometimes sleep in her room. Appellant was her mother's "friend," and he occasionally spent the night at their house. The victim testified that appellant started coming into her room in early December 2011, when she was eleven years old. She said that he touched her vagina over her clothes. The victim explained that she slept under her covers but that appellant would move the covers to touch her. He did not remove her clothes. She estimated that he came into her room five different times. The victim said that she told him, "'No,'" once but that he only stopped when her brothers entered the room.

The victim recalled one occasion when she and her younger brother were wrestling with appellant in her mother's room. She stated, "I got flipped over the bed, and he had pulled half of his stuff out and tried to put it in my pants, but he couldn't unbutton my pants." She clarified that "his stuff" meant "his private part." The victim testified that one day, appellant asked her, "'[W]hy you [sic] let other boys touch you but I can't[?]'" She said that she replied, "'I don't let other boys touch me and he can't.'" The victim said that she did not tell her mother about what appellant was doing right away because she was afraid "he might do something." She changed her mind after talking about the situation with a friend, T.F., who encouraged her to inform someone. After she told her mother what had happened, her siblings "jumped" appellant. Thereafter, the police arrived. She talked to the police about what happened, and her interview was videotaped. On cross-examination, the victim agreed that her older siblings were close in age to appellant and that they did not "particularly like" appellant.

The victim's friend, T.F., testified that the victim told her what appellant had done to her when they were discussing why they hated their mothers' boyfriends. T.F. told her mother what the victim said.

The victim's mother ("Mother") testified that appellant was her "former friend." She said that appellant had lived around the corner from her with his "baby mama" but would occasionally stay the night at her house. Mother recalled that appellant treated the victim differently than her other children, explaining, "He would always . . . take up for [the victim] and always bring her some drinks and stuff, candy." Mother said that she did not know that anything inappropriate had occurred between the victim and appellant until T.F.'s mother called her. Mother also spoke with the victim about the situation. After the victim told Mother's other children what happened, some of her children fought with appellant. Mother called the police, but appellant left her house before the police arrived.

On cross-examination, Mother agreed that she sold candy and drinks from her home. She further agreed that her older children did not like that she was dating a man who was close to them in age. She said that she did not care that appellant had been living with his child's mother.

One of the victim's younger brothers ("Brother") testified that he occasionally slept in the victim's room. He recalled seeing appellant "creeping . . . in" the victim's room "at night, and he pulled the cover to the side and he pulled [Brother] and [his] other little brother off the bed, and he pulled down [the victim's] pants." Brother said that he was awake when this happened but that he did not say anything. He further said that he put his hand over his mouth to keep from saying anything because he believed that if he said something, appellant would have become scared and would not come back. He gestured to show how appellant touched the victim's private part, and the assistant district attorney general described Brother's gesture as "a tapping motion." Brother testified that he saw appellant touching the victim in this manner three times and that the third time, appellant also touched the victim's chest. Brother said that one time occurred on December 18.[2] He said that he told one of his older brothers and his mother about what he had seen.

On cross-examination, Brother said that the victim's friend had been the one who told him that something happened on December 18. Brother agreed that his mother was "the candy lady" for the neighborhood and that people would come to their home to buy candy. On redirect examination, Brother testified that he did not like appellant because appellant treated the victim better than he treated him.

Shelby County Sheriff's Deputy Jessica Hawkins testified that on December 19, 2011, she responded to a sexual assault call at the victim's residence. She observed some blood inside and outside the house and later learned that appellant had been in a fight with one of the victim's brothers. Because appellant had left the residence, Deputy Hawkins took statements from the victim and Mother. She then contacted her supervisor.

Shelby County Sheriff's Sergeant Natalie Hillman testified that she worked in the Special Victims Unit. She responded to the victim's residence on December 19, 2011, and spoke with the victim and Mother. Sergeant Hillman then scheduled forensic interviews for the victim, Mother, and Brother. The victim's and Brother's interviews occurred at the Child Advocacy Center, and Sergeant Hillman observed both interviews. Sergeant Hillman testified that the victim indicated that the last incident with appellant happened four days

---

[2] We recognize that this date is outside the scope of the indictment. It is also inconsistent with the victim's testimony regarding the dates that appellant touched her.

prior to December 19. Sergeant Hillman further testified that she interviewed appellant, who indicated that he was twenty-four years old at the time of the allegations.

On cross-examination, Sergeant Hillman said that in his interview, appellant told her that he had wrestled with the victim and that if he had touched her, it was accidental.

Following the close of proof, arguments of counsel, and deliberations, the jury found appellant guilty of aggravated sexual battery as charged. The trial court sentenced him to serve ten years in the Tennessee Department of Correction with a release eligibility of 100%.

## II. Analysis

### A. Sufficiency of the Evidence

Appellant contends that the evidence was insufficient to support his conviction for aggravated sexual battery. Specifically, he argues that the State's witnesses had "reason and motive . . . to lie" and that other persons might have committed the offense when they entered the victim's home to buy candy from her mother. The State responds that the evidence was sufficient for any rational jury to find appellant guilty of aggravated sexual battery. We agree with the State.

The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court

presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

As relative to appellant's convictions in this case, "[a]ggravated sexual battery is unlawful sexual contact with a victim by the defendant . . . [where] [t]he victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-504(a)(4). Tennessee Code Annotated section 39-13-501(6) further defines "sexual contact" as "the intentional touching of the victim's . . . intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's . . . intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." "'Intimate parts' include[] the primary genital area, groin, inner thigh, buttock or breast of a human being." Tenn. Code Ann. § 39-13-501(2).

Viewed in the light most favorable to the State, the evidence at trial showed that appellant entered the victim's room on multiple occasions and touched her genital area through her clothing. The victim testified about appellant's conduct, and the victim's younger brother also testified that he had seen appellant touching the victim in this manner.[3] The victim told police that the last time appellant touched her was approximately December 15, 2011, four days prior to when she revealed appellant's conduct to her mother and the police. The victim was eleven years old at the time of appellant's conduct. Appellant's argument essentially attacks the credibility of the witnesses in identifying appellant as the perpetrator. However, the credibility of witnesses is a matter for the trier of fact, not this court. *Bland*, 958 S.W.2d at 659. We conclude that the evidence was sufficient for a rational jury to find beyond a reasonable doubt that appellant committed the offense of aggravated sexual battery.

## B. Closing Arguments

Appellant argues that the assistant district attorney general committed prosecutorial misconduct during closing arguments. However, appellant did not object at any point during

---

[3] The victim also testified about another occasion when appellant tried to unbutton her pants, but this conduct does not appear to be the basis for the indictment.

the closing arguments. Generally, failure to object results in waiver of the issue unless the statements made are so flagrant that they amount to plain error. *State v. Banks*, 271 S.W.3d 90, 132 (Tenn. 2008). In this case, appellant has failed to establish the need for plain error review and has failed to cite any legal authority regarding this issue in his appellate brief. *See* Tenn. R. App. P. 36(b); Tenn. R. Crim. App. 10(b). Therefore, appellant has waived this issue for failure to object contemporaneously and for preparing an inadequate brief. Tenn. R. Crim. App. 10(b); *Banks*, 271 S.W.3d at 132.

## C. Sentencing

As a matter of plain error, we have observed that the judgment form in this case indicates appellant's release eligibility as "Child Rapist 100%" when it should indicate his release eligibility as "Violent 100%." *See Roger Brent Banks v. Cherry Lindamood, Warden*, No. W2013-00458-CCA-R3-HC, 2014 WL 217662, at *2 (Tenn. Crim. App. Jan. 17, 2014) (holding that a petitioner's judgment forms for aggravated sexual battery must be corrected to indicate release eligibility of "Violent 100%" when petitioner did not meet child predator prerequisites). Tennessee Code Annotated section 39-13-523(a)(2) limits the child rapist category to persons convicted of rape of a child as defined in section 39-13-522. Instead, appellant was convicted of aggravated sexual battery, with no prior convictions for predatory offenses as listed in section 39-13-523(a)(5). His release eligibility is governed by section 40-35-501(i), which provides that for the enumerated offenses, including aggravated sexual battery, a defendant must serve 100% of his or her sentence, less sentence credits earned or retained, not to exceed 15% of the sentence. In contrast, a child rapist's sentence cannot be reduced by sentence credits. Tenn. Code Ann. § 39-13-523(b). Therefore, we remand this matter to the trial court for correction of the judgment form to indicate appellant's release eligibility as "Violent 100%." *See Roger Brent Banks*, 2014 WL 217662, at *2. All other aspects of the judgment form shall remain the same.

## CONCLUSION

Based on the record, the briefs of the parties, and the applicable legal authority, we affirm the judgment of the trial court. However, we must remand this case to the trial court for correction of the judgment form pursuant to this opinion.

_____
ROGER A. PAGE, JUDGE