# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
June 12, 2012 Session

## STATE OF TENNESSEE v. JERRY L. CRAWFORD, JR.

**Appeal from the Circuit Court for Crockett County**
**No. 4171     Clayburn Peeples, Judge**

---

**No. W2011-02651-CCA-R3-CD  - Filed June 19, 2012**

---

A Crockett County Grand Jury indicted appellant, Jerry L. Crawford, Jr., for one count of statutory rape and one count of contributing to the delinquency of a minor. A jury found him guilty of both counts, and the trial court sentenced him to consecutive sentences of four years for statutory rape and eleven months, twenty-nine days for contributing to the delinquency of a minor. Appellant raises the following issues on appeal: (1) whether the State's evidence proved beyond a reasonable doubt that appellant engaged in sexual intercourse with the victim "knowing" that she was under the legal age of consent; and (2) whether appellant possessed knowledge of the victim's age simultaneously with the intent to engage in intercourse with her. Discerning no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and JEFFREY S. BIVINS, JJ., joined.

Harold R. Gunn, Humboldt, Tennessee, for the appellant, Jerry L. Crawford, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Senior Counsel; Garry G. Brown, District Attorney General; and Larry Hardister and Hillary Lawler Parham, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### I. Procedural History

On February 14, 2011, a Crockett County Grand Jury indicted appellant for one count of statutory rape, in violation of Tennessee Code Annotated section 39-13-506, and one count

of contributing to the delinquency of a minor, in violation of Tennessee Code Annotated section 37-1-156.  The jury trial on June 28, 2011, resulted in verdicts of guilty on both counts.  Following the trial, petitioner filed a motion for a new trial on the issue that he did not "knowingly" engage in sexual intercourse with the victim.  The trial court denied the motion.  Appellant filed a timely notice of appeal.

## II.  Facts

The victim, S.M.,[1] testified that she lived with her grandparents in Crockett County. She met her boyfriend, Caminski Crawford,[2] on the day before she started school in Humboldt when she was living with her mother.  S.M. and her boyfriend dated for a time, and she became pregnant by him.  At the time of trial, the child had been born.

In November of 2010, Caminski called S.M. around midnight and told her he wanted to see her. Caminski and his brother, the appellant, drove to S.M.'s home.  S.M. went outside and entered the vehicle.  She did not tell her grandparents that she was leaving because they would not allow her to go out late at night.

Appellant drove, with Caminski in the passenger seat and S.M. in the back seat.  After a brief period, appellant stopped the vehicle in a field in the country.  Caminski and S.M. engaged in consensual sexual intercourse in the back seat of the car.  When Caminski and S.M. finished, Caminski asked S.M. if his brother could also have sex with her.  She testified that at first she was reluctant, but she agreed.  Caminski and appellant changed places in the vehicle, and S.M. and appellant engaged in vaginal intercourse.  At that point, appellant had not said anything to S.M.  He did not say anything to her during intercourse.

During intercourse, appellant attempted to anally penetrate the victim.  She told him to stop.  Appellant attempted to accomplish the act once again but eventually stopped. Afterward, S.M. started crying and Caminski asked her what was wrong. The three of them returned to S.M.'s house, where she exited the vehicle about two houses away from her grandparents' home.  S.M. walked to her grandparents' home, went inside, and fell asleep. Her grandmother woke her the following morning for church.

At church, S.M.'s cousin overheard her crying in the bathroom.  S.M. testified that she was "hurting" and had difficulty using the restroom.  S.M.'s cousin called her mother, who was S.M.'s aunt, and together they brought S.M.'s grandmother and "the mother of the

---

[1]  Pursuant to this court's policy of preserving the anonymity of minor victims of sexual offenses, we will refer to the victim by her initials only.

[2]  Both appellant and "Caminski" have the surname "Crawford."  To avoid confusion, we will refer to them as "appellant" and "Caminski," respectively.  In using first names, we intend no disrespect.

church" to the bathroom. When asked what was wrong, S.M. said "they" had raped her. She knew it was not true, but she told them she had been raped because she did not want the women to judge her.

S.M.'s grandmother drove her to the hospital where a nurse examined her. S.M. told the nurse she had been raped; she did not tell the nurse the truth because her grandmother was in the examining room. When the nurse completed her examination, Detective Penny Curtis with the Crockett County Sheriff's Department spoke with S.M., who repeated the same story to the detective. The following day, Detective Curtis formally interviewed S.M., and she showed the detective the field where the acts occurred. Detective Curtis asked S.M. to write a statement about what happened the previous night. At that point, S.M. admitted that she consented to sexual intercourse with Caminski and appellant.

S.M. testified that when she first met Caminski, she told him she was eighteen years old. She later told him her true age, which was sixteen years old at the time. She testified that she never told appellant her age and never said anything to him other than, "Quit." She never heard Caminski tell appellant her age.

Detective Curtis testified that she had been in the criminal investigative unit of the department for eleven years. Her responsibilities included investigating violent crimes and crimes against children. On November 7, 2010, she received a report of a rape from emergency room personnel at Jackson-Madison County General Hospital. Detective Curtis drove to the hospital and first met with Pam Ervin, the registered nurse who performed the sexual assault examination. Detective Curtis collected the evidence contained in the sexual assault kit. She also took a photograph of S.M.'s vaginal area.

In S.M.'s first statement, she told Detective Curtis that after Caminski finished having sexual intercourse with her and she consented to have intercourse with appellant, Caminski had S.M. perform oral sex on him while appellant penetrated her vaginally. When appellant tried to penetrate her anally, she asked him to stop. S.M. told Detective Curtis that they did not stop and that they held her shoulders down. The following day, S.M. told Detective Curtis that she consented to sexual intercourse with both men. She said that she thought she would be engaging in intercourse with Caminski only, but when he asked S.M. if appellant could have sex with her also, she agreed.

On November 8, 2010, Caminski telephoned Detective Curtis before she made contact with him. She ascertained appellant's identity through her conversation with Caminski. Detective Curtis created a line-up of photographs, and S.M. positively identified appellant.

Detective Curtis testified that when she first questioned appellant on November 20, 2010, he seemed more intrigued with how she caught him. She read him his *Miranda* rights. Appellant never denied having intercourse with S.M. He wrote a brief statement in which

he admitted that he and his brother "picked her up[,] . . . had a threesome[,] and . . . dropped her off." Detective Curtis ascertained that appellant was twenty-six years of age and that Caminski was twenty-four years of age at the time. Appellant told Detective Curtis that his brother told him that S.M. was eighteen years old. He never claimed that S.M. said she was eighteen.

Pamela Irvin, R.N., testified that, through specialized training, she had been certified as a Sexual Assault Nurse Examiner. She performed the examination of S.M. During the examination, Ms. Irvin noted some tearing and bruising accompanied by a great deal of swelling in the victim's vaginal area. The swelling was so severe that Ms. Irvin could not continue the vaginal examination with a speculum, as done in most exams.

Appellant called Caminski Crawford as a witness. He began to testify but then declined to answer trial counsel's questions. After questioning Caminski in a jury-out hearing, the trial court found that Caminski had invoked his right against self-incrimination. The trial court instructed the jury to disregard his testimony.

## III. Analysis

Appellant raises two arguments, both of which are encompassed by an analysis of the sufficiency of the State's convicting evidence. The standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, " we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom." *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the

evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729; *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011) (citing *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

To convict appellant of statutory rape, the State must have proven: (1) unlawful sexual penetration of a victim by the defendant or of the defendant by the victim; and (2) that the victim was at least fifteen but less than eighteen years of age at the time of the offense and the defendant was more than five but less than ten years older than the victim.[3] Tenn. Code. Ann. § 39-13-506(b)(2) (2010). "Sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required." Tenn. Code. Ann. § 39-13-501 (2010).

Appellant's first argument maintains that the evidence was insufficient to sustain his conviction because the State did not prove that he "knowingly" engaged in sexual intercourse with a victim between the ages of fifteen and eighteen years. The Sentencing Reform Act of 1989 provides that a culpable mental state is required for conviction of an offense unless the statutory definition of the offense "'plainly dispenses with a mental element.'" *State v. Hill*, 954 S.W.2d 725, 728 (Tenn. 1997) (quoting Tenn. Code Ann. § 39-11-301(b) (1991)). When a statute omits reference to a specific *mens rea*, but does not plainly dispense with the requirement of a culpable mental state, proof of "intent," "knowledge," or "recklessness" will implicitly establish a culpable mental state. *Id.* (citing Tenn. Code Ann. § 39-11-301(c) (1991)). The legal definition of statutory rape does not expressly require a culpable mental state, yet neither does it clearly dispense with the requirement. *See* Tenn. Code Ann. § 39-13-506 (2010).

This court has addressed the intent requirement for a statutory rape conviction, reasoning, "[I]n the context of a statutory rape prosecution a defendant may be said to act 'recklessly' when he is aware of but consciously disregards a substantial and unjustifiable

---

[3] Although appellant does not raise the issue, we note that the indictment charging him stated that the defendant must be "at least four (4) years older than" the victim but should have stated "more than five but less than ten years older" than the victim. The evidence at trial established that appellant was almost ten years older than S.M. The error in the indictment is harmless and does not prejudice appellant. "Indictments which achieve the overriding purpose of notice to the accused will be considered sufficient to satisfy both constitutional and statutory requirements." *State v. Hammonds*, 30 S.W.3d 294, 300 (Tenn. 2000). The indictment in this case was sufficient to put appellant on notice of the offense for which he was indicted.

risk that the person who he is about to sexually penetrate is between the ages of [15] years and [18] years." *State v. Ballinger*, 93 S.W.3d 881, 890 (Tenn. Crim. App. 2001). The State was not required to prove that appellant acted "knowingly;" it only had to prove that appellant acted "recklessly."

The convicting evidence, in the light most favorable to the State, sufficiently proved beyond a reasonable doubt that appellant acted recklessly, at the very least. The State proved through S.M.'s testimony and through appellant's admission to Detective Curtis that appellant engaged in intercourse with the victim. The nurse corroborated S.M.'s testimony with physical evidence. The State proved the victim's age through her testimony and appellant's age through the testimony of Detective Curtis. The State proved through the victim's testimony and through appellant's statement that appellant engaged in intercourse with a young girl without inquiring about her age. S.M. testified that her boyfriend Caminski picked her up from her grandparents' home. She did not drive. The victim's youth, together with the fact that she did not drive, should have placed appellant on notice that, at a minimum, he should have inquired whether she was eighteen years old. Moreover, circumstantial evidence supports the conclusion that appellant actually knew the victim was sixteen years old; his brother Caminski, who had been involved in an ongoing relationship with the victim for approximately three months, knew that she was sixteen years old. From the evidence, the jury could have concluded that appellant acted "knowingly" or "intentionally," as well.

Appellant's second argument, whether he possessed knowledge of the victim's age simultaneously with the intent to engage in intercourse with her, is without merit. We have concluded that the State was not required to prove that appellant acted "knowingly," therefore, whether he knew the victim's age at the time of the sexual act is irrelevant. The State's evidence supports appellant's conviction.

## III. Conclusion

Considering the record as a whole, the parties' briefs, and the applicable case law, we affirm the judgments of the trial court.

_____
ROGER A. PAGE, JUDGE