# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs July 16, 2013

## STATE OF TENNESSEE v. CORREL MARCELLUS BAKER

**Appeal from the Circuit Court for Coffee County**
**No. 38869      Vanessa A. Jackson, Judge**

---

**No. M2013-00520-CCA-R3-CD - Filed September 6, 2013**

---

Appellant, Correl Marcellus Baker, was convicted by a Coffee County jury of aggravated robbery and reckless endangerment. The trial court sentenced him to eight years for the aggravated robbery conviction and merged the reckless endangerment conviction into the aggravated robbery conviction. On appeal, appellant argues that the evidence was insufficient to support his conviction for aggravated robbery. Following our review, we affirm the judgment of the trial court but remand for entry of a corrected judgment reflecting that the reckless endangerment conviction was merged into the aggravated robbery conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed as Modified; Case Remanded**

ROGER A. PAGE, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Bethel Campbell Smoot, Jr., District Public Defender; and Kevin R. Askren, Assistant District Public Defender, Tullahoma, Tennessee, for the appellant, Correl Marcellus Baker.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Charles Michael Layne, District Attorney General; and Felicia B. Walkup, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts

This appeal concerns an incident that occurred in Coffee County during the Bonnaroo Music and Arts Festival in 2011. Appellant grabbed wristbands used for admission into the

festival from the possession of the victim. On June 9, 2011, Manchester Police Officer Landon Pence witnessed a man, later identified as George Panagoulis ("the victim"), being dragged by a black Nissan Altima as it pulled out of a Rite Aid Pharmacy parking lot. The victim's body appeared to be dangling from the driver's window, and he was yelling to the driver to stop. Officer Pence used his radio to request back-up because his own patrol car contained two arrestees on their way to jail. When he made the radio call, his police dashboard camera was triggered. The camera recorded a significant portion of the events that followed.

Officer Pence saw the victim fall from the vehicle. He felt certain that the victim had been run over by the car dragging him. The car sped past Officer Pence; the driver ignored the lights on Officer Pence's patrol car. Officer Pence kept the Nissan Altima in his sight and ultimately directed Officer Adam Floied to it. Officer Floied forced the car to a stop at the J & G Pizza and Steak House.

At trial, the victim testified he was in Manchester that day selling wristbands for admission to Bonnaroo, a high-profile music festival held near the town each year. The victim made his living by buying tickets to major events at discounted prices, then attending those events to sell the tickets to last-minute purchasers for a profit. He had attended the Bonnaroo festival in the past but had not done so for several years. The victim stated that he was standing outside of a Rite Aid when a black Nissan Altima approached him. The victim asked through the open driver's window of the car if the passengers were seeking Bonnaroo tickets. The front seat passenger, whom the victim identified at trial as appellant, was the primary negotiator for the purchase of the wristbands. In the back seat were three passengers, two females, Tessa Albright and Cheyenne Coffee, and a male, Justin Crutchfield. The victim stated that he did not speak with the driver, Dru Talley, at any point.

The victim testified that appellant indicated he was interested in the wristbands and asked to see the ones the victim had with him at the time. Appellant then asked the victim to prove the wristbands were real. To do so, the victim pulled from his wallet the city permit allowing him to sell the tickets. The victim testified at trial that he was leaning inside the car, across Mr. Talley, to show appellant the permit. At this point, the victim said appellant grabbed the wristbands, causing the victim to drop his wallet in the car. Appellant shouted at Mr. Talley, directing him to leave quickly, though the victim could not recall appellant's exact words . Mr. Talley complied, and the victim was dragged along, hanging onto the car by the window frame. The victim testified that he pleaded with Mr. Talley to stop the car and let him go. He told Mr. Talley that they could have the wristbands and his wallet if he stopped. Mr. Talley did not stop. The victim also testified that appellant shouted at him to "jump" from the car.

The victim testified that he fell off the car after being punched in the face. He was unable to testify as to who hit him. On cross-examination, the victim indicated that the whole event took place in approximately two minutes and covered "about 150 yards."

When Officer Pence approached him, the victim was lying in the road. He had not been hit by the car. The victim had lacerations to the back of his head, which hit the pavement when he fell from the car. He also had abrasions to his shoulder, arm, and hands. The victim was transported to the Medical Center of Manchester emergency department where he was treated for his injuries.

Meanwhile, Officer Floied began interacting with the occupants of the car. He found five individuals in the car and directed them to step out of the car. Officer Floied asked for each passenger's identification. When he searched the car, he found the five stolen wristbands and the victim's wallet on the floorboard. Based on the seriousness of the crime and the evidence linking the occupants of the car to it, Officer Floied took all of them into custody and transported them to the police department for questioning.

At appellant's trial, two of the passengers, Tessa Albright and Justin Crutchfield, testified. Ms. Albright claimed she was not friends with appellant but knew him from the local skate park. She stated that she and Cheyenne Coffee had "run into" appellant and Mr. Talley at Walmart. Ms. Albright and Ms. Coffee asked Mr. Talley for a ride to the skate park. The group, including Mr. Crutchfield, went to the skate park but left soon after arriving to search for wristbands for Bonnaroo. Ms. Albright stated that Mr. Talley pulled into the Rite Aid parking lot and that the interaction with the victim started thereafter. Ms. Albright testified that she was sitting directly behind Mr. Talley, the driver. While Mr. Talley and appellant looked at the wristbands, Ms. Albright and the victim had a conversation about Florida. She further testified that she saw appellant take the wristbands from the victim before the car accelerated. Ms. Albright said that the victim was being "punched and dragged" down the road and that she and Ms. Coffee were screaming for Mr. Talley to stop. She recalled Mr. Talley's punching the victim, causing him to fall from the car, but she testified that both men had punched the victim during the event.

After the state rested its case-in-chief, appellant presented Mr. Crutchfield as a witness. He testified that he knew appellant from the skate park. Mr. Crutchfield said he and appellant went to Walmart in search of Bonnaroo wristbands and ran into Mr. Talley, who offered to drive them. Mr. Crutchfield said he was friends with Ms. Albright. After visiting the skate park, the group decided to go to Bonnaroo. Mr. Crutchfield was sitting in the middle of the backseat, between Ms. Albright and Ms. Coffee. On the "back way" to Bonnaroo, Mr. Talley noticed the victim selling wristbands at the Rite Aid and pulled into the parking lot.

Mr. Crutchfield testified that Mr. Talley and the victim argued over the wristbands. He could not recall who grabbed the wristbands from the victim. Mr. Crutchfield could not get out of the car despite his desire to do so, as he was in the middle seat. When Mr. Talley drove away from Rite Aid, the victim refused to release the wristbands. Mr. Crutchfield testified that he told the victim to "let go" and encouraged Mr. Talley to drive faster, as he was "freaking out." Mr. Crutchfield was on probation for a theft offense at the time. Mr. Crutchfield stated that he saw Mr. Talley punch the victim "more than once." The victim fell off the car after it entered the roadway.

On cross-examination, Mr. Crutchfield said he had been friends with appellant but not Mr. Talley, of whom he was afraid. When asked why he was afraid of Mr. Talley, Mr. Crutchfield indicated that he had heard that Mr. Talley was "messed up in the head." However, he was trying to get to Bonnaroo, so he was willing to take the offered ride.

Following the close of proof and deliberations, appellant was convicted of aggravated robbery and reckless endangerment. The trial court sentenced him to eight years for the aggravated robbery conviction and merged the reckless endangerment conviction into the aggravated robbery conviction.

## II. Analysis

Appellant argues that the evidence was insufficient to support his conviction for aggravated robbery.[1] Specifically, he contends that there was no direct evidence that he shared the driver's intention to use the vehicle as a deadly weapon to accomplish the robbery and that the circumstantial evidence did not exclude every reasonable theory or hypothesis except that of guilt. The State responds that appellant's argument relies on an incorrect standard of review regarding circumstantial evidence and that the evidence was sufficient to support appellant's conviction for aggravated robbery. We agree with the State.

The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of

---

[1] We note that appellant attempted to include in his brief a challenge to the trial court's actions as the thirteenth juror; however, he has waived that challenge because it is "not supported by argument, citation to authorities, or appropriate references to the record." Tenn. Ct. Crim. App. R. 10(b).

the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

To sustain a conviction for aggravated robbery as charged in the indictment, the State must have proven beyond a reasonable doubt that appellant committed "intentional or knowing theft of property from" the victim "by violence or putting the [victim] in fear" and "[a]ccomplished [the theft] with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. §§ 39-13-401, -402 (2010).

The State pursued a theory that appellant was criminally responsible for the actions of the driver. "A person is criminally responsible as a party to an offense if the offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both." Tenn. Code Ann. § 39-11-401(a) (2010). Further, a person is criminally responsible for an offense committed by the conduct of another, if "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense[.]" *Id*. § 39-11-402(2). While not a separate crime, criminal responsibility is a theory by which the State may alternatively establish guilt based on the conduct of another. *Dorantes*, 331 S.W.3d at 386 (citing *State v. Lemacks*, 996 S.W.2d 166, 170 (Tenn.1999)). No specific act or deed needs to be demonstrated by the State, and

-5-

furthermore, the presence and companionship of an accused with the offender before and after the offense are circumstances from which participation in the crime may be inferred. *State v. Ball*, 973 S.W.2d 288, 293 (Tenn. Crim. App. 1998). However, to be convicted, "the evidence must establish that the defendant in some way knowingly and voluntarily shared in the criminal intent of the crime and promoted its commission." *Dorantes*, 331 S.W.3d at 386 (citing *State v. Maxey*, 898 S.W.2d 756, 757 (Tenn. Crim. App. 1994)); *State v. Foster*, 755 S.W.2d 846, 848 (Tenn. Crim. App. 1988)).

Viewed in the light most favorable to the State, the evidence shows that appellant grabbed the victim's wristbands and ordered the driver to leave while the victim was leaning half-way into the vehicle, causing the victim to be caught and dragged along, hanging from the vehicle as the driver turned onto a highway. Appellant, the driver, or both appellant and the driver punched the victim, and he let go of the vehicle, falling into the roadway. The police found the wristbands and the victim's wallet in the vehicle. From this proof, any rational jury could have found appellant guilty of aggravated robbery beyond a reasonable doubt.

Appellant argues that the State did not prove that he shared the driver's intention to use the vehicle as a deadly weapon. However, under the criminal responsibility theory, the State did not have to prove any specific act or deed to show that he shared the driver's intention because the presence and companionship of an accused with the offender before and after the offense are circumstances from which participation in the crime may be inferred. *Ball*, 973 S.W.2d 288, 293. Nonetheless, in this case, the victim testified that appellant directed the driver to drive away. Appellant is without relief as to this issue.

## CONCLUSION

Based on our review of the record, the parties' briefs, and the applicable law, we affirm appellant's conviction for aggravated robbery. However, we remand the case to the trial court for entry of a corrected judgment reflecting the merger of the reckless endangerment conviction into the aggravated robbery conviction.[2]

_____
ROGER A. PAGE, JUDGE

---

[2] In his brief, appellant notes that the trial court merged the convictions during the motion for new trial hearing, the transcript of which is not included in the appellate record. However, appellant's motion for new trial and the State's response are included in the record, and in the State's response, it concedes that merger would be appropriate. While the record does not reflect the trial court's action in this regard, we conclude from our review that merger was appropriate.