# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs January 7, 2014

## STATE OF TENNESSEE v. COURTNEY WESLEY

**Appeal from the Criminal Court for Shelby County**
No. 11-06153      Chris Craft, Judge

**No. W2013-00430-CCA-R3-CD  - Filed January 17, 2014**

Appellant, Courtney Wesley, was convicted of aggravated burglary, a Class C felony, and theft of property valued at $1,000 or more but less than $10,000, a Class D felony. The trial court imposed concurrent sentences of ten years and four years, respectively. Appellant now challenges the sufficiency of the convicting evidence. After careful review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

James E. Thomas (on appeal) and Jeff Woods (at trial), Memphis, Tennessee, for the appellant, Courtney Wesley.

Robert E. Cooper, Jr., Attorney General and Reporter; Caitlin E.D. Smith, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Chris Lareau, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case involves the aggravated burglary of a residence belonging to the victim, Rodney Pickering, and theft of property therefrom.

### I.  Facts

The State called James Vaughn as its first witness. He lived across the street from the victim on October 14, 2010. Late that evening, he was sitting on his front porch when he observed a truck pull into the victim's driveway. He saw three men exit and walk toward the

victim's house. Mr. Vaughn stated that one of the men instructed him to go back inside his house. At that time, Mr. Vaughn telephoned both the victim and the police. He could see that the men had "half-loaded" the back of the truck with the victim's belongings. He described one of the men as African-American and wearing an orange shirt and blue jeans. He could tell that another of the men was "a white guy," but the third individual was concealed by the shadows. Mr. Vaughn stated that "the white guy" was a look-out while the African-American man loaded items into the truck. The driver was still parked in the driveway when police arrived approximately two or three minutes later, at which time Mr. Vaughn walked over to the victim's house. At that time, Mr. Vaughn observed two men running around the back of the victim's house. The victim, who had not been at home, arrived shortly thereafter.

Mr. Vaughn recalled that the Caucasian man was beside the truck when police arrived, and they handcuffed him and placed him in the back seat of the police car. While an officer remained with the arrestee, another officer engaged in a foot chase of the fleeing suspects. Mr. Vaughn and the victim then walked around the house, where they could see that the burglars had gained entry by kicking in the back door of the house. On cross-examination, Mr. Vaughn clarified that the victim's front porch light was on and that because of the lighting conditions, he could ascertain the race of two of the men and the color of the shirt worn by the African-American man.

The victim testified that on the date of the offenses, he maintained two residences and traveled between the two; however, the residence that was burglarized was his primary residence. He was staying at the residence that housed his business that night. He received a call from Mr. Vaughn that his home was being burglarized, so he asked Mr. Vaughn to call the police as he began to drive there. When he arrived approximately fifteen minutes later, he observed several police officers on the scene and a pick-up truck in his driveway. The victim was informed that officers were pursuing other individuals who had fled. Subsequently, one of the men was apprehended and brought back to the scene for a "show-up" identification, but the victim could not identify the man. He recalled that the man was wearing an orange shirt. The State directed the victim's attention toward appellant and asked if he knew appellant. The victim stated that he did not.

The victim stated that he observed that his back door had been kicked in. Most of the items that the perpetrators attempted to steal were either scattered in his yard or in the back of the truck; however, several items remained unaccounted for. The victim testified that he collected NASCAR memorabilia, such as signed model cars, and that he and the officers counted thirty-nine cars in various locations around the scene. He presented two of such cars as demonstrative evidence for the jury: a signed replica of the General Lee, which appeared on the television show "The Dukes of Hazard," and a signed replica of a car driven by Cary

Earnhardt, son of the deceased NASCAR racer Dale Earnhardt. He valued the cars at $100-$400 each.

On cross-examination, the victim clarified that the burglarized home was, indeed, his residence, although he sometimes stayed overnight at his office. He acknowledged that at the preliminary hearing, when asked if he resided at that house, he answered, "Not at that time." He stated that he probably stayed overnight at that residence a "couple of days" prior to the burglary.

The State's next witness was Officer Sean Kirby with the Memphis Police Department. He responded to the call at the victim's house on October 14, 2010. Upon arrival, his partner detained a white male who was seated inside of the truck, and Officer Kirby proceeded to the rear of the house, where he witnessed two men exiting the house carrying boxes. He stated that when the men saw him, they dropped the boxes, "took off running[,] and jumped the fence." During the brief encounter, Officer Kirby could see the side of one man's face. He then followed the men and simultaneously called in a description of the perpetrators. He reported that there were two black males, one dressed in dark clothing and the other dressed in an orange t-shirt. Officer Kirby chased them for approximately two blocks. Another officer then radioed that "someone" had been detained, so Officer Kirby returned to his vehicle and drove to that location. He identified the detainees as the men he had followed from the victim's house. At trial, Officer Kirby identified appellant as the man who had been wearing the orange shirt.

Officer Kirby described the lighting conditions at the victim's house and said that there was a light hanging over the back door and a light at the end of the driveway. As such, officers could clearly see a man sitting inside the truck, and when Officer Kirby walked to the back of the house, he could see that the door was open and that men were walking out. He further stated that when he viewed appellant in custody after the chase, appellant was sweating even though it was a "chilly" night in October.

On cross-examination, defense counsel questioned Officer Kirby with regard to his preliminary hearing testimony. Counsel highlighted the fact that at the preliminary hearing, Officer Kirby testified that he saw appellant jumping over a fence when he walked to the back of the house and not that he saw appellant walking out of the residence. Also, at the preliminary hearing, Officer Kirby described appellant's clothing as being an orange sweater rather than an orange t-shirt. Further, Officer Kirby testified at trial that he lost sight of appellant during the chase for one to two minutes, but at the preliminary hearing, he stated that it was five to ten minutes. On redirect examination, Officer Kirby confirmed that there was no doubt that appellant was the man in the orange shirt he saw running from the victim's house.

Officer Eric Dobbins with the Memphis Police Department testified next. He stated that he responded to the burglary call involving the victim's house and that when he arrived in the area, he observed a black male wearing an orange shirt crossing a street. Officer Dobbins approached the man and noticed that he was sweating. After placing his hand on the man's chest, Officer Dobbins could tell that his heart was racing. Officer Dobbins heard a radio broadcast informing officers that the suspect who fled had a nickname or "street name" of Code Red. Appellant subsequently identified himself by name and confirmed that his nickname was Code Red. Other officers arrived at his location and identified appellant as the person who ran from the victim's house. Officer Dobbins identified appellant at trial, as well. Officer Dobbins stated that when appellant was arrested, he was accompanied by Darrell Harris, a black male dressed in all black.

The State rested its case-in-chief, and appellant presented no proof. Following deliberations, the jury returned guilty verdicts on the charges of aggravated burglary and theft of property valued at $1,000 or more but less than $10,000. The parties agreed that appellant was a Range II offender and negotiated sentences of ten years for aggravated burglary and four years for theft to be served concurrently with each other. The trial court accepted the agreement. Following denial of the motion for a new trial, this appeal follows.

## II. Analysis

Appellant presents one issue for our review: sufficiency of the convicting evidence. The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the

evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

To sustain a conviction for aggravated burglary as charged in the indictment, the State must prove that appellant entered a habitation without the effective consent of the property owner and with the intent to commit theft. *See* Tenn. Code Ann. §§ 39-14-402, -403. The State's evidence proved that the back door of the victim's house had been kicked in. Appellant and an associate were seen exiting the house, carrying property that belonged to the victim. The victim asserted that he did not know appellant and had not given appellant permission to enter his house. Moreover, the victim clarified that although he often spent the night at another location that housed his business, the house that was burglarized was, indeed, his residence.

To support a conviction for theft of property, the State must prove that appellant, "with intent to deprive the owner of property, . . . knowingly obtain[ed] or exercise[ed] control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103(a). Theft of property valued at $1,000 or more but less than $10,000 is a Class D felony. Tenn. Code Ann. § 39-14-105(a)(3). The State presented evidence that appellant was carrying property that belonged to the victim as he exited the victim's house. More of the victim's property had already been loaded into a waiting truck. Appellant dropped the box he was carrying as he fled the scene. The victim testified with regard to the value attributed to the property.

Appellant challenges his convictions on the basis of identity. He characterizes Officer Kirby's testimony as "at best unbelievable and at worst[,] blatantly untrue." He points to inconsistencies between the officer's testimony at the preliminary hearing and at trial, namely: (1) that appellant was wearing an orange sweater, not an orange t-shirt; (2) that he lost sight of the perpetrators for five to ten minutes, rather than one to two minutes; and (3) that Officer Kirby saw individuals exiting the victim's residence, rather than seeing appellant jumping the fence. He maintains that "[g]iven that [Officer] Kirby is the only witness who claims that [appellant] was the assailant," the conviction should be reversed.

The jury heard Officer Kirby's testimony at trial. Counsel conducted a thorough cross-examination, highlighting the inconsistences between his preliminary hearing testimony and his trial testimony. The jury, fully informed, made a credibility finding and obviously found Officer Kirby's testimony at trial to be credible. Moreover, the jury resolved all factual disputes in favor of the State. *See Bland*, 958 S.W.2d at 659. As noted above, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835. The State presented sufficient evidence by which the jury could find appellant guilty of both offenses beyond a reasonable doubt. Appellant is without relief on this claim of error.

## CONCLUSION

Based upon our review of the record as a whole, the briefs of the parties, and applicable legal authorities, we affirm the judgments of the trial court.

_____
ROGER A. PAGE, JUDGE