IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
January 22, 2015 Session

## STATE OF TENNESSEE v. EDDIE JOE WHITAKER

**Appeal from the Criminal Court for Campbell County**
**No. 14586     E. Shayne Sexton, Judge**

**No. E2014-01066-CCA-R3-CD - Filed March 27, 2015**

The Defendant, Eddie Joe Whitaker, was convicted by a Campbell County jury of retaliation for past action and failure to appear. See Tenn. Code Ann. §§ 39-16-510, -16-609. On appeal, he contends that the evidence is insufficient to support his convictions. Following our review, we conclude that the evidence is sufficient to support the Defendant's conviction for retaliation for past action but that the evidence is insufficient to sustain the conviction for failure to appear. Therefore, the conviction for retaliation for past action is affirmed, and the conviction for failure to appear is reversed and that charge is dismissed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court**
**Affirmed in Part; Reversed and Dismissed in Part**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Michael G. Hatmaker, Jacksboro, Tennessee, for the appellant, Eddie Joe Whitaker.

Herbert H. Slatery, III, Attorney General and Reporter; Lacy Wilber, Senior Counsel; Jared Effler, District Attorney General; and Scarlet W. Ellis, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

FACTUAL BACKGROUND

Mark Bell testified that he was employed full-time with the Jellico Fire Department and that he worked part-time as a dispatcher for the Jellico Police Department. He testified that he had known the Defendant "for years." On August 25, 2009, Mr. Bell was subpoenaed to testify against the Defendant. Mr. Bell testified that he was present in court that day and

that he saw the Defendant in the courtroom but that he did not actually testify against the Defendant. As the Defendant was leaving the courtroom, he told Mr. Bell that "if he caught [Mr. Bell] on the Kentucky side, he'd whip [his] a--." Mr. Bell did not respond to the Defendant's threat.

Assistant Chief J.J. Hatmaker testified that he worked for the Jellico Police Department and that he was in general sessions court on August 25, 2009. He was sitting near Mr. Bell in the rear of the courtroom. Asst. Chief Hatmaker heard the Defendant threaten Mr. Bell with "a butt whipping when he caught him on the Kentucky side of the line." Asst. Chief Hatmaker's memory was that Mr. Bell did in fact testify that day, but when pressed as to whether he was sure that Mr. Bell testified, he responded that "[it was] a while back." Asst. Chief Hatmaker also testified that he did not believe the Defendant would follow through on his threat to Mr. Bell.

Mr. Bell testified that around 5:00 p.m. on August 25, he was driving through Jellico when the Defendant pulled in behind Mr. Bell and, motioning with his hand out the window, "tried to flag [Mr. Bell]" to get him to pull over. Mr. Bell pulled over on the side of the road, and the Defendant then pulled his vehicle over, exited, and approached Mr. Bell's vehicle. Mr. Bell remained in his vehicle. The Defendant asked Mr. Bell why he had "showed up in [c]ourt against him that day," and Mr. Bell responded that he had been "summonsed [sic] and . . . had to show up." According to Mr. Bell, the Defendant "kind of acted like he understood, but he was aggravated about it." The Defendant complained that the case against him "was a bunch of BS," and that "he was gonna have to pay an extra [$]5,000 to get out of it." The Defendant also alleged that "the only reason that [the prosecuting officer] was doing this was because . . . [the Defendant] wouldn't sleep with her." This conversation went on for "a couple of minutes." Eventually, the Defendant walked back to his vehicle, and Mr. Bell drove away.

Mr. Bell testified that he next saw the Defendant on August 26, 2009, at Jellico City Hall. Mr. Bell was sitting in the court clerk's office with Officer Wayne Conrad, Jackie Richardson, and Officer Jeff Ivey. Mr. Bell was in the office reading a magazine and talking to the others when he saw the Defendant walking towards the office. Initially, Mr. Bell "didn't think nothing of it" because "[the Defendant] could have been coming in for any business." However, the Defendant proceeded to point his finger at Mr. Bell and said, "That right there is the one I'm gonna kill," as he walked toward Mr. Bell. Mr. Bell testified that he "just looked at [his] magazine" and "tried not to say anything back because [he] was on duty and didn't want to risk losing [his] job or anything." Mr. Bell explained that he "didn't know what to think" and "was kind of shocked" by the Defendant's threat but that he did take the threat seriously because "[i]t ain't every day somebody tells you they are gonna kill you . . . ."

On cross-examination, Mr. Bell testified that he was about six-foot, four-inches tall and weighed about 308 pounds. He said that he could not estimate the Defendant's height and weight but admitted he was "a lot bigger" than the Defendant. Nevertheless, Mr. Bell insisted that "just because [the Defendant's] littler [sic] than me don't mean he can't whoop me." Mr. Bell admitted that the Defendant was not arrested on August 26, 2009, and, in fact, was arrested two or three days later.

Officer Wayne Conrad testified that he was employed by the Jellico Police Department and that he was present at the police station on August 26, 2009. Officer Conrad testified that Jackie Richardson, Mark Bell, and Jeff Ivey were also present in the "business office" at the station. Officer Conrad testified that on the afternoon of August 26, the Defendant entered the business office, pointed his finger at Mr. Bell, said, "There's the one I'm gonna kill," and walked toward Mr. Bell. Officer Conrad "told [the Defendant] that he wasn't threatening nobody in [the office] and told [the Defendant] to get out." The Defendant left the office as requested.

Officer Conrad further testified that the Defendant "looked agitated . . . [and] [m]ad, in a rage." According to Officer Conrad, he knew the Defendant was referring to Mr. Bell when he made the threat because the Defendant "pointed directly at [Mr. Bell]." Officer Conrad said that when he intervened, the Defendant "threw his arms up and said, 'I was just joking,'" but Officer Conrad "didn't take it as a joke."

Detective Sergeant Jeff Ivey of the Jellico Police Department testified that he was at the police department on August 26, 2009. On that day, the Defendant entered the office, pointed at Mr. Bell, and said, "There's the man I'm gonna kill," while walking toward Mr. Bell's desk. Officer Conrad immediately escorted the Defendant out of the office. He described the Defendant's voice as "kind of monotone" when he made the threat. Detective Sergeant Ivey testified that it was not uncommon for a person to walk through the office and exit the building via an exterior door located in the office. He also testified that he did not remember the Defendant's saying he was "just joking" after delivering the threat. Detective Sergeant Ivey testified that even though the Defendant threatened Mr. Bell, he did not arrest the Defendant that day.

Jackie Richardson testified that she worked for the Jellico Police Department and that she was present on August 26, 2009, when the Defendant entered the office and threatened Mr. Bell. Ms. Richardson's description of the events matched the testimony provided by the other witnesses, except that Ms. Richardson testified that the Defendant was "yelling" and "hollering" when he threatened Mr. Bell. She testified that the entire episode lasted "[a] minute at the most."

Asst. Chief Hatmaker also testified that he was at the police department on August 26, 2009, but was located down the hallway from where the incident occurred. He spoke with the Defendant before the Defendant entered the area where Mr. Bell was sitting, and Asst. Chief Hatmaker did not recall the Defendant's being agitated or upset. He testified that the Defendant was not "screaming or squalling" but said that he could hear the Defendant "make some remarks," although he could not "tell . . . what exactly they were."

Alicia Collins testified that she worked in the clerk's office for the General Sessions Court of Campbell County. She testified that she normally appeared in Judge Ayers's court on Tuesday and that her duties included processing most of the arrest warrants that came through the court as well as preparing a docket every Tuesday and working the Tuesday court date. Ms. Collins testified that when a defendant did not appear for his or her court date, she was responsible for issuing an arrest warrant at the direction of the judge.

Ms. Collins identified an appearance bond showing that the Defendant was scheduled to appear in general sessions court for case number CM164478 on September 9, 2011. After reviewing another document listing some of the Defendant's court dates, she testified, "It looks like [the September 11 court date] was reset to October [13], 2009." She next identified a capias that she prepared on October 13, 2009, which was issued after the Defendant failed to make an appearance in court that day in case number CM164478. She also identified a document showing that the capias was served on the Defendant on October 14, 2009.

Ms. Collins testified that the Defendant was cited again for failure to appear in general sessions court on February 16, 2010, in case number CM164478, and she prepared a capias that day.[1] She identified a document entitled "recall of court process," which was marked as exhibit 10. The document, dated February 24, 2010, listed docket numbers CM164923, CM164895, CM164478, CM165782, TO239198, and TO239199, and on the form's "type of process" section, the words "attachment" and "capias" are circled. Ms. Collins testified that the judge requested the recall of process, that it could have been requested for a number of reasons, and that she could not say why it had been requested in this particular case. We note that the document entitled "recall of court process" is not in the form of an order and is not signed by the judge.

Defense counsel questioned Ms. Collins about the "[c]ourt file" for case number 14586, which is the basis of this appeal. From the record, it appears that Ms. Collins had a copy of that case file at trial, which she reviewed on the witness stand. Trial counsel asked

---

[1] The Defendant was originally indicted for the February 16 failure to appear, but that charge was dismissed by the State prior to trial.

Ms. Collins whether exhibits 8 and 9 were in the court file for case number 14586; Ms. Collins responded that they were not. She described exhibits 8 and 9 as warrants for the October 13, 2009 and February 16, 2010 failures to appear, respectively.

After Ms. Collins's testimony, the State rested its case. The jury was excused, and the defense moved for a judgment of acquittal as to the failure to appear charge. Relying on Ms. Collins's testimony regarding the court file for case number 14586, counsel argued that, because exhibits 8 and 9 had been removed from the court file, "there [was] nothing in the file . . . establishing that [the Defendant] was ever charged with failure to appear." The trial court denied the Defendant's motion, finding that "the fact that this particular document is not within the [c]ourt file is not dispositive of the issue" and that there was sufficient evidence to submit the issue to the jury.

Eddie Wayne Barton, II, testified for the defense. Mr. Barton testified that although he was no longer employed by the Jellico Police Department, he was an officer with the department on August 25, 2009. He testified that he was in the courtroom that day when the Defendant made a statement about Mr. Bell. However, he could not remember whether Mr. Bell was actually present when the statement was made. Mr. Barton was asked whether he would have arrested a person if he or she committed a crime in his presence on August 25, 2009; he responded that he would have. He further testified that he did not arrest the Defendant as a result of anything he said on August 25, 2009.

The jury convicted the Defendant as charged. The trial court sentenced the Defendant to six years on each charge, to be served consecutively for a total effective sentence of twelve years in the Tennessee Department of Correction. This appeal followed.

ANALYSIS

On appeal, the Defendant contends that the evidence was insufficient to support his convictions for retaliation for past action and failure to appear. With respect to the retaliation for past action conviction, the Defendant argues that the victim was not a "witness" within the meaning of the applicable statute. He also argues that the State did not to prove that the Defendant was absent in court on October 13, 2009. The State responds that the evidence was sufficient to support both convictions.

*I. Standard of Review*

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict. Bland, 958 S.W.2d at 659; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). A guilty verdict "may not be based solely upon conjecture, guess, speculation, or a mere possibility." State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). However, "[t]here is no requirement that the State's proof be uncontroverted or perfect." State v. Williams, 657, S.W.2d 405, 410 (Tenn. 1983). Put another way, the State is not burdened with "an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 326.

The following standard "applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). Our supreme court has held that circumstantial evidence is as probative as direct evidence. State v. Dorantes, 331 S.W.3d 370, 379-81 (Tenn. 2011). In doing so, the supreme court rejected the previous standard which "required the State to prove facts and circumstances so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt." Id. at 380 (quoting State v. Crawford, 470 S.W.2d 610, 612 (Tenn. 1971) (quotation marks omitted)).

Instead, "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." Dorantes, 331 S.W.3d at 381. The reason for this is because with both direct and circumstantial evidence, "a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference . . . ." Id. at 380 (quoting Holland v. United States, 348 U.S. 121, 140 (1954)). To that end, the duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

*II. Retaliation for Past Action*

In order to support a defendant's conviction for retaliation for past action as charged

in the indictment, the State was required to prove the following elements: (1) that the defendant harmed or threatened to harm the alleged victim by any unlawful action; (2) that the alleged victim had been a witness at an official proceeding; (3) that the defendant did so in retaliation for anything the witness did in an official capacity as a witness; and (4) that the defendant acted either intentionally, knowingly, or recklessly. See Tenn. Code Ann. § 39-16-510. The Defendant asserts that because Mr. Bell was not called to testify on August 25, 2009, he was not a "witness at an official proceeding" as required by the statute, and thus, the evidence was insufficient to convict him. The Defendant has not cited to any relevant legal authority in support of this contention.

This court has previously held that a person may be a "witness" within the purview of Tennessee Code Annotated section 39-16-510 even though he or she never actually testified at an official proceeding. In State v. Manning, we concluded that the act of signing an affidavit made one a witness under the statute, regardless of whether the witness testified in court. 909 S.W.2d 11, 12 (Tenn. Crim. App. 1995). In State v. Bobby Gene Wilson, we expanded on that conclusion, holding that "signing [an] affidavit of complaint is [not] the exclusive way for one to become a 'witness.'" No. 01C01-9711-CC-00552, 1999 WL 233553, at *2 (Tenn. Crim. App. Apr. 22, 1999). In Wilson, the witness had complained to authorities about the defendant's behavior, was subpoenaed to testify, and appeared in court; however, she was never actually called to the witness stand because the defendant ultimately waived the preliminary hearing. Id. Although we acknowledge that the instant case may be distinguished from the cited cases on the basis that Mr. Bell was not the complaining party in the underlying offense, we nevertheless conclude that he was a witness within the meaning of section 39-16-510. He appeared, under subpoena, to testify against the Defendant. Mr. Bell's presence in the courtroom was the basis for the Defendant's subsequent threats directed at him. Therefore, we believe our conclusion comports with the spirit of these prior decisions as well as the statute itself.

We further conclude that the evidence was otherwise sufficient to support the Defendant's conviction. In the light most favorable to the State, the evidence at trial showed that Mr. Bell was subpoenaed to testify against the Defendant and that he appeared in court, although he was not actually called to testify. Upon leaving the courtroom, the Defendant made threatening remarks to Mr. Bell. Later that same day, the Defendant flagged down Mr. Bell while the he was driving and asked him why he had "showed up in court against him." The next day, the Defendant walked into Jellico City Hall where he approached Mr. Bell, pointed at him, and said, "That's the one I'm gonna kill." The Defendant threatened Mr. Bell twice following his court appearance and specifically referred to Mr. Bell's presence in the courtroom. From these facts, we conclude that there was sufficient evidence from which the jury could find the Defendant guilty of retaliation for past action.

The Defendant puts great emphasis on the fact that he was not immediately arrested after threatening Mr. Bell even though the threat was made in the presence of police officers. He argues that even if we conclude that Mr. Bell was a witness, this failure to arrest him immediately after the threats were made proves that no one present took the threat seriously; thus, no crime was committed. The jury, as the trier of fact, is empowered to make credibility determinations and to determine the weight and value to be given to evidence. See Bland, 958 S.W.2d at 659. Although the jury was presented with evidence that the Defendant was not arrested until several days after the threats were made, Mr. Bell, as well as other witnesses, testified that the threats were serious. The jury apparently accredited that testimony. The Defendant's argument is without merit.

### III. Failure to Appear

The Defendant was also convicted of violating Tennessee Code Annotated section 39-16-609. That statute, as relevant here, provides that "[i]t is unlawful for any person to knowingly fail to appear as directed by a lawful authority if the person . . . [h]as been lawfully released from custody, with or without bail, on condition of subsequent appearance at an official proceeding . . . at a specified time or place[.]" Tenn. Code Ann. § 39-16-609(a)(4). The requisite mental element expressed in the proscriptive statute is knowing. See Tenn. Code Ann. § 39-11-302(b). Establishing the mental state of knowing "will usually depend on inference and circumstantial evidence." State v. Brown, 915 S.W.2d 3, 7 (Tenn. Crim. App. 1995).

In challenging his conviction for failure to appear, the Defendant advances two theories: (1) that the State failed to prove that he was not in court on October 13, 2009; and (2) that the recall of process established that any process issued pursuant to his failure to appear was withdrawn. We cannot agree. First, the State did offer proof that the Defendant was not present in court on October 13, 2009. Ms. Collins testified that she was working in court that day, that the Defendant did not appear, and that she subsequently issued a capias for his arrest. Ms. Collins also testified about the document entitled "recall of court process," which was dated February 24, 2010. She testified that a judge could request a recall of process for any number of reasons, and she could not testify as to why it was requested in this particular case. Again, we emphasize that the document entitled "recall of court process" was not in the form of an order or signed by a judge. Furthermore, there is no proof in the record to establish what action, if any, was taken pursuant to the "recall of court process." Regardless, cases CM164895 and CM165782, charging the Defendant with failure to appear, were bound over to the grand jury on March 30, 2010, resulting in the return of the indictment in this case.

Although we have concluded that the Defendant's proffered arguments must fail, our

review nevertheless leads us to the conclusion that the State failed to prove an essential element of the charged offense: that the Defendant's failure to appear was knowing. This court has previously held that "a defendant 'knowingly' fails to appear in court within the meaning of section 39-16-609, when he or she fails to appear after having been informed of his or her duty to appear in court on the date at issue." State v. Jimmy Sprague, No. E2010-00288-CCA-R3-CD, 2011 WL 3329814, at *4 (Tenn. Crim. App. Aug. 3, 2011). Although Ms. Collins did testify that the Defendant failed to appear in court on October 13, 2009, the State produced no evidence that the Defendant was informed that he was expected in court that day. The State produced an appearance bond, signed by the Defendant, which indicated the Defendant's initial appearance was September 11, 2009. The State also introduced a form with the notation "PH 10/13/09 12:00"; however, that form was not signed or acknowledged by the Defendant, and there was no testimony otherwise establishing that the Defendant saw that form or was otherwise informed that his court date had been reset.

We have examined other cases where this court has affirmed failure to appear convictions that were challenged on sufficiency grounds. We find those cases distinguishable in that, in those cases, there was testimony that the defendant was informed of the pertinent court date. See Sprague, 2011 WL 3329814, at *6 (concluding that the State's evidence was sufficient when it proved that at defendant's initial court date he was instructed that he was to reappear on a later date, which he failed to do). At the very least, the State offered testimony detailing the methods that the court generally utilized when informing a defendant of an upcoming court date, allowing for the inference that the instant defendant was likewise supplied with notice. See State v. Don Wayne Williams, No. 2009-00024-CCA-R3-CD, 2009 WL 3103824, at *3 (upholding defendant's conviction where trial judge testified that he ordinarily informed defendants of trial date at preliminary hearing and that court staff's usual practice was to provide defendant with a card listing date and time of next court appearance); State v. Gregory Dunnorm, E2006-00366-CCA-R3-CD, 2007 WL 152542, at *1 (Tenn. Crim. App. Jan. 22, 2007) (upholding conviction upon sufficiency challenge when State introduced evidence that the court regularly provided defendants with cards listing court date and bailiff could not remember a time when a scheduling card was not given to defendant).

In the present case, there is a dearth of such evidence. An appearance bond, signed by the Defendant, instructed that his court date was September 11, 2009. There is nothing in the record showing whether the Defendant did in fact appear on September 11 and that case was continued until the October date, or instead, whether he was informed in some other fashion that his appearance had been rescheduled for October. Likewise, the State introduced no testimony regarding the trial court's usual procedures for notifying a defendant of his or her court date from which the jury might infer that such procedures were followed in the instant case. Therefore, the State failed to carry its burden of proving that the

Defendant knew he had a court date scheduled for October 13, 2009; the failure to appear is reversed, and the charge dismissed. <u>See</u> <u>State v. Williford</u>, 824 S.W.2d 553, 554 (Tenn. Crim. App. 1991) (holding that double jeopardy principles prohibit retrial "where a reversal is based on insufficient evidence").

<u>CONCLUSION</u>

Based upon the foregoing and the record as a whole, the conviction for retaliation for past action is affirmed. The conviction for failure to appear is reversed and dismissed.

_____

D. KELLY THOMAS, JR., JUDGE

-10-