IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 4, 2015

**STATE OF TENNESSEE v. RODNEY BRYANT**

**Appeal from the Criminal Court for Shelby County**
**No. 1300088     Lee V. Coffee, Judge**

_____

**No. W2014-01570-CCA-R3-CD  -  Filed August 12, 2015**

_____

Appellant, Rodney Bryant, was convicted of carjacking and sentenced to twelve years in the Tennessee Department of Correction.  On appeal, he argues that the evidence was insufficient to support his conviction.  Following our review, we affirm the judgment of the trial court.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the Court, in which ALAN E. GLENN and ROBERT H. MONTGOMERY, JR., JJ., joined.

James Edward Thomas (on appeal), and Juni S. Ganguli (at trial), Memphis, Tennessee, for the Appellant, Rodney Bryant.

Herbert H. Slatery III, Attorney General and Reporter; Tracy L. Alcock, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Lessie Lee Calhoun Rainey and Samuel David Winnig, Assistant District Attorneys General, for the Appellee, State of Tennessee.

**OPINION**

I.  Facts

The Shelby County Grand Jury indicted appellant for carjacking and employing a firearm during the commission of a felony.  He was tried by a jury in May 2014 and convicted of carjacking.  The jury found him not guilty of the firearm charge.

At appellant's trial, Devin Chatman testified that on August 27, 2012, she and her fiancé, Michael Vincent, attempted to sell a vehicle on the website Craigslist, listing it at $2000. A copy of the listing for a 1988 Chevy Caprice Brougham was submitted as an exhibit. She explained that they wanted to sell the vehicle because they were trying to move out of her mother's house. Ms. Chatman said that they showed the vehicle to a couple of people who determined they did not want the vehicle. She stated that she and Mr. Vincent then received a text message from another interested party who negotiated the price down to $1600. They planned to meet the person to show him the vehicle. Mr. Vincent drove the Caprice to the designated meeting location, and Ms. Chatman followed in her own car. She said that they arrived between 8:00 and 8:30 p.m. A man approached them, having traveled to the location on foot. Ms. Chatman identified appellant in the courtroom as the person they met. Ms. Chatman testified that Mr. Vincent indicated to her that appellant was going to test-drive the car. Appellant drove the Caprice away, with Mr. Vincent in the passenger seat. Ms. Chatman said that five minutes later, Mr. Vincent returned to her, running. He told her that appellant had carjacked him at gunpoint.

Ms. Chatman further testified that she and Mr. Vincent returned to her mother's house and that they picked up Mr. Vincent's brother en route. Ms. Chatman believed that they returned to the house at 10:00 p.m. They argued over whether to call the police. Ms. Chatman said that she advocated calling the police but that Mr. Vincent was concerned that appellant, who also had the title of the car, would retaliate. Eventually, Mr. Vincent called the police. They reported to the police that appellant used the nickname "HotRod" as his signature on text messages. They also gave the police "HotRod's" telephone number. Ms. Chatman explained that she had to look at their T-Mobile bill to get the number because the text messages were on Mr. Vincent's telephone, which he had left in the stolen car. Ms. Chatman stated that she never tried to look at appellant's profile on Facebook.

On cross-examination, Ms. Chatman testified that there were "For Sale" signs on the vehicle. She further testified that no one else was with her and Mr. Vincent when they went to meet appellant. Ms. Chatman said that when Mr. Vincent returned to her after the carjacking, he told her that appellant had said, "'You know what this is,'" and that Mr. Vincent "demonstrated what [appellant] did to him as far as putting the gun up to [Mr. Vincent's] head." She stated that while Mr. Vincent had not directly said that he had been struck in the head, his demonstration of appellant's actions caused her to ask Mr. Vincent whether he needed to go to the hospital. He responded that "it wasn't that bad." Ms. Chatman agreed that they did not call 9-1-1 until several hours after the carjacking and that while she could not remember the exact time, she would not disagree if the 9-1-1 records indicated that they called at 1:40 a.m. on August 28. Ms. Chatman testified that Mr. Vincent told her that he had seen appellant before the carjacking but did not know his name.

Michael Vincent testified that he bought the vehicle in question in Pine Bluff, Arkansas, approximately one month before the carjacking for $1000. He stated that he decided to sell the vehicle because his family "needed extra money." He posted an advertisement for the vehicle on Craigslist, listing it at $2000. He received a couple of inquiries about the vehicle prior to appellant's contacting him. Mr. Vincent said that appellant sent him a text message about the vehicle and that they negotiated a price of $1650.[1] He testified that the negotiations were made through text messages except for one telephone call prior to the meeting. Mr. Vincent said that appellant chose the meeting location and agreed that the chosen address was on Claybrook Cove. Mr. Vincent testified that the text messages from appellant contained a signature line reading, "HotRod." He said that the meeting occurred "around seven-ish."

Mr. Vincent further testified that he and Ms. Chatman drove separately to the meeting location. When appellant approached on foot, Mr. Vincent exited the vehicle and opened the hood to show appellant the engine. Mr. Vincent identified appellant in the courtroom as the man to whom he had shown the vehicle. Appellant asked to test drive the car, so Mr. Vincent signaled to Ms. Chatman to wait for him and re-entered the car on the passenger side. Mr. Vincent explained the route that appellant drove using a map of the area. He said that appellant asked about the vehicle title and that he removed the title from his pocket. At that point, appellant pulled out a gun and ordered Mr. Vincent out of the car. Mr. Vincent described the gun as "little," silver, and semi-automatic, possibly a .380 caliber. He said that appellant "shove[d]" him in the head with the gun and said, "Get out [of] the car. You know what this is. Get out." Mr. Vincent said that he exited the car and ran back to Ms. Chatman. He stated that the car was moving but only "a couple of miles per hour." He left his cellular telephone and the vehicle title in the car when he exited.

Mr. Vincent testified that he did not want to call the police but that Ms. Chatman convinced him to do so. He thought that they called 9-1-1 around midnight. Mr. Vincent said that on August 28, the day following the carjacking, he identified appellant in a photographic array as the carjacker. He identified the photographic array and the statement that he wrote on the array. Mr. Vincent said that his vehicle was returned to him, along with the title, approximately a week later. He identified a copy of the car title. He agreed that his name was not on the car title and that he did not know the person whose name was on the title. He stated that he "wanted to sell it as an open title." Mr. Vincent said that when the car was taken, it had a license plate in the rear window that was registered to a Ford Taurus previously owned by Mr. Vincent.

---

[1] We note that there is a discrepancy in the witnesses' testimonies regarding the negotiated price of the vehicle.

-3-

On cross-examination, Mr. Vincent testified that it would be "inaccurate" to say that he was having financial problems in August 2012. He agreed that Ms. Chatman had looked at appellant's Facebook profile. Mr. Vincent stated that if he had told a defense investigator in December 2013 that he never had "For Sale" signs on the Caprice, then that statement was inaccurate. He further stated that he had not been truthful when he testified in an earlier proceeding that his brother and child had been with him and Ms. Chatman when they went to meet appellant. Mr. Vincent testified that appellant had been wearing "[w]hite shorts, a Tshirt[,] and a ball cap" that day. He denied telling a police officer that appellant had been wearing all black. Mr. Vincent said that he believed the carjacking occurred at 7:45 p.m. but that he might have told a police officer that it happened at 10:00 p.m. He explained that he had "lost total track of time." Mr. Vincent agreed that on August 28, 2012, he told police that appellant "kind of hit me with [the gun] in the back of the head." Mr. Vincent reiterated on the stand that it was "kind of like a hit" but refused to characterize it as a "strike." Mr. Vincent agreed that he told police that he had not seen appellant before the evening of the carjacking but could not remember whether he told officers that appellant "looked familiar." He did not remember what else he told officers on August 28, 2012. Mr. Vincent testified that he was not injured when he jumped out of the vehicle because the vehicle was not moving fast and he landed in grass. Mr. Vincent agreed that he told police that the carjacking occurred at the corner of Claybrook Cove and Brown Avenue, and he explained that he gave that cross-street because he was unfamiliar with the area and that was the only cross-street he remembered. He stated that if he had said Watkins Street and Brown Avenue in a previous hearing, he was "mixed up."

Memphis Police Officer LaShunda Coleman testified that she took Mr. Vincent's report after he called 9-1-1. She recalled that Mr. Vincent reported being carjacked when he met a potential buyer for his car. She further recalled that Mr. Vincent was able to provide a nickname and a telephone number for the suspect but no other information. She broadcasted the information about the vehicle and the suspect to other officers and informed her lieutenant. Officer Coleman agreed that she took the report after 1:00 a.m. on August 28.

On cross-examination, Officer Coleman agreed that Mr. Vincent reported to her that "this person had approached him and pulled a black handgun, while demanding the keys and Mr. Vincent's cell phone." He further reported to her that the carjacking had occurred around 10:00 p.m.

Memphis Police Sergeant Kevin Williams testified that he was the lead investigator in this case. Mr. Vincent gave "HotRod's" telephone number to Sergeant Williams, and Sergeant Williams discovered through use of the police department's database that the number had been used by appellant and by Herschel Bryant. Sergeant Williams prepared two photographic arrays, one with appellant's photograph and one

with Herschel Bryant's photograph. Sergeant Williams testified that Mr. Vincent chose appellant's photograph, identifying appellant as the carjacker. Mr. Vincent did not identify Herschel Bryant's photograph. Sergeant Williams said that he prepared a "wanted flyer" with appellant's information and emailed the flyer to the North Precinct. Just over thirty minutes after emailing the flyer, Sergeant Williams received a call that appellant was "in custody in Mr. Vincent's car." Appellant was then brought to Sergeant Williams' office. Sergeant Williams testified that he viewed appellant's cellular telephone, noting that it was the same number reported by Mr. Vincent. In addition, appellant's telephone contained a text message to a number ending in 5020. The message was a Claybrook Cove address, and the signature line was ":)HOT:$ROD%$#¿."

On cross-examination, Sergeant Williams agreed that his supplement indicated that Mr. Vincent had told him that he had bought the Caprice in Arkansas two days before the carjacking for $1500. Sergeant Williams testified that Mr. Vincent told him that the carjacking occurred while appellant was test driving the vehicle; however, Sergeant Williams said that this information was not included in his supplement and that he believed it was in another document.

Memphis Police Officer Benjamin Daugherty testified that on August 30, 2012, he participated in the arrest of appellant. He said that he went to Claybrook Cove, noted that the house where Mr. Vincent met appellant was boarded up, and then proceeded to appellant's address on Lexington Circle. Appellant was not at that address. After leaving appellant's street, he saw Mr. Vincent's Caprice being driven down Brown Avenue with two individuals inside. Officer Daugherty and his partner, driving separate vehicles, attempted to stop the Caprice. The driver of the Caprice did not stop but instead drove to Lexington Circle. Officer Daugherty then apprehended the driver, whom he identified as appellant. The passenger in the Caprice was appellant's mother, who allowed Officer Daugherty to search part of their house. He did not find anything related to the case in the house.

Memphis Police Officer Darrell Cherry testified that he also participated in appellant's arrest. He corroborated Officer Daugherty's testimony and added that he transported appellant to the robbery bureau.

The State rested its case-in-chief following Officer Cherry's testimony. Following closing arguments and deliberations, the jury convicted appellant of carjacking but acquitted him of employing a firearm in the carjacking. The trial court sentenced appellant to serve twelve years in the Tennessee Department of Correction.

## II. Analysis

Appellant argues that the evidence was insufficient to support his conviction for carjacking because the victim's testimony was not credible.

The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

To sustain a conviction for carjacking as charged in the indictment, the State must prove beyond a reasonable doubt that appellant intentionally or knowingly took the victim's vehicle from his possession by use of force or intimidation. Tenn. Code Ann. § 39-13-404. Viewed in the light most favorable to the State, the evidence at trial showed that appellant contacted Mr. Vincent about purchasing Mr. Vincent's 1988 Caprice. When they met for the exchange, appellant asked to test drive the vehicle. Ms. Chatman

confirmed that appellant was the person who met her and Mr. Vincent at the location chosen by appellant. During the test drive, Mr. Vincent said that appellant produced a gun and told him to get out of the car. Mr. Vincent complied and ran back to Ms. Chatman. This evidence was sufficient to support appellant's conviction.

Appellant's specific challenge to the sufficiency of the convicting evidence was the credibility and veracity of one of the witnesses against him. This court has previously stated,

> [Appellant's] challenge to the sufficiency of the evidence invites this court to revisit the question of the victim's credibility . . . . Because the resolution of questions of fact, including witness credibility, is within the province of the jury, we must decline the defendant's invitation. By its verdict, the jury accredited the [witness's] testimony despite its sometimes inconsistent nature on particular details.

*State v. Thompson*, 36 S.W.3d 102, 107 (Tenn. Crim. App. 2000); *see also State v. Stephens*, 264 S.W.3d 719, 740 (Tenn. Crim. App. 2007) (noting that appellant's challenge to the sufficiency of the evidence was based on the credibility of a witness and that this court will not discount the testimony of a witness and engage in a re-weighing or re-evaluation of the evidence on appeal). All witnesses were thoroughly cross-examined, and the jury assessed the testimony and evidence at trial. We will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379. Appellant is not entitled to relief on this claim.

## CONCLUSION

Based on the record, the briefs of the parties, and the applicable law, we affirm the judgment of the trial court.

_____
ROGER A. PAGE, JUDGE